Salovin v Orange Regional Med. Ctr. (2019 NY Slip Op 05738)





Salovin v Orange Regional Med. Ctr.


2019 NY Slip Op 05738


Decided on July 18, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 18, 2019

527327

[*1]AARON R. SALOVIN, as Executor of the Estate of HELEN SALOVIN, Deceased, Appellant,
v
ORANGE REGIONAL MEDICAL CENTER et al., Respondents, et al., Defendants.

Calendar Date: May 29, 2019

Before: Garry, P.J., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Finkelstein & Partners, LLP, Newburgh (Jeffrey Brody of counsel), for appellant.
Sholes & Miller LLP, Fishkill (Angela Thompson-Tinsley of counsel), for Orange Regional Medical Center, respondent.
Catania, Mahon, Milligram & Rider, PLLC, Newburgh (Ari I. Bauer of counsel), for Hudson Valley Hospital Physicians and another, respondents.



MEMORANDUM AND ORDER
Pritzker, J.
Appeals (1) from a judgment of the Supreme Court (Schick, J.), entered January 26, 2018 in Sullivan County, upon a verdict rendered in favor of defendant Orange Regional Medical Center, and (2) from a judgment of said court, entered February 5, 2018 in Sullivan County, upon a dismissal of the complaint against defendants Hudson Valley Hospital Physicians and Pamela Amerige-Vogt after opening statements.
In June 2012, Helen Salovin (hereinafter decedent) was admitted to defendant Orange Regional Medical Center (hereinafter ORMC) for hip replacement surgery. After the surgery, decedent experienced minor pain and blood loss; however, a few days later, she died as a result of respiratory and cardiac arrest, which stemmed from, among other things, gastrointestinal (hereinafter GI) bleeding. Plaintiff, as executor of decedent's estate, commenced this medical malpractice action against, among others, ORMC, defendant Hudson Valley Hospital Physicians (hereinafter Hudson Valley) — an independent medical group retained by ORMC to provide hospital care to its patients — and defendants Pamela Amerige-Vogt and Denise Smithen, nurse practitioners employed by Hudson Valley. Plaintiff alleged, among other things, that ORMC was vicariously liable for the actions of its own nurses and the actions of Amerige-Vogt and Smithen, who failed to provide decedent with proper treatment in accordance with the accepted standards of medical care.
The action ultimately proceeded to a jury trial, and, after opening statements, Supreme Court dismissed the complaint against Amerige-Vogt — as well as any vicarious liability claims as to Hudson Valley arising from her actions — because plaintiff failed to make specific allegations against her. At the conclusion of plaintiff's proof, the court also dismissed the complaint against Smithen — as well as any vicarious liability claims as to Hudson Valley arising from her actions. Thereafter, the case proceeded solely against ORMC, and the jury returned a unanimous verdict finding that ORMC did not depart from the accepted standards of medical care. The court entered judgment in favor of ORMC and, shortly thereafter, entered two separate judgments — the first dismissing the complaint against Amerige-Vogt and Hudson Valley for its vicarious liability of Amerige-Vogt, and the second dismissing the complaint against Smithen and Hudson Valley for its vicarious liability of Smithen. Plaintiff now appeals from the judgment in favor of ORMC and from the judgment dismissing his complaint against Amerige-Vogt and Hudson Valley [FN1]. We affirm.
Plaintiff contends that Supreme Court should have granted his motion to set aside the verdict as against the weight of the evidence. It is well settled that we "may not disregard a jury verdict as against the weight of the evidence unless 'the evidence so preponderated in favor of the moving party that it could not have been reached on any fair interpretation of the evidence'" (Killon v Parrotta, 28 NY3d 101, 108-109 [2016] [brackets omitted], quoting Lolik v Big V Supermarkets, 86 NY2d 744, 744 [1996]; accord Blanchard v Chambers, 160 AD3d 1314, 1315 [2018]). "In a medical malpractice action, . . . the plaintiff bears the burden of proving by a preponderance of the evidence that the defendant deviated or departed from accepted medical practice and that such deviation or departure was a proximate cause of the [patient's] injury" (Rabideau v Weitz, 169 AD3d 1330, 1331 [2019] [citations omitted]; see Mazella v Beals, 27 NY3d 694, 705 [2016]). A hospital may be held vicariously liable for the negligence of its employees (see Doe v Guthrie Clinic, Ltd., 22 NY3d 480, 484 [2014]; Imbierowicz v A.O. Fox Mem. Hosp., 43 AD3d 503, 506-507 [2007]).
Here, the jury was presented with a classic battle of the experts as to whether the nurses at ORMC violated the accepted standards of medical care in their treatment of decedent after surgery. Plaintiff presented the expert testimony of Joel Silverman, a medical doctor, who reviewed decedent's hospital records and discussed her treatment at ORMC. Silverman noted that decedent had a prior medical history of bleeding ulcers. Silverman acknowledged that both decedent's hip surgery and immediate recovery were uneventful, until two days after her surgery when decedent fainted. Silverman explained that decedent also vomited several times, at first vomiting undigested food, but then, shortly before she died, she began vomiting "coffee ground emesis," which indicated blood in the stomach. Silverman also testified to various other symptoms that, in his opinion, may have indicated that decedent was experiencing GI bleeding. Silverman opined as to several failings of the ORMC nurses, including a failure to test decedent's stool for blood and a failure to obtain a consultation from a GI specialist. Plaintiff also presented the expert testimony of Annemarie Costello, a clinical nurse specialist, who echoed Silverman's opinions, specifically that the nurses employed by ORMC breached the accepted standards of medical care by, among other things, failing to perform testing to determine whether there was blood in decedent's stool and by failing to consult with a GI specialist. Further, Costello testified that the nurse who was present when decedent vomited coffee ground emesis violated the standard of care by failing to seek assistance and medical intervention and by leaving decedent's bedside for approximately 10 minutes to clean out the emesis basin, during which time decedent aspirated on her own vomit and died.
In response, ORMC presented, among other evidence, the expert testimony of Ann Maguire, a registered nurse, who ultimately opined that the nurses did not depart from the [*2]accepted standard of medical care in their treatment of decedent. Specifically, Maguire testified that the nurses responded appropriately when decedent vomited undigested food given that decedent, after vomiting, felt better and was not in distress. Also, Maguire explained that one of the nurses contacted Smithen to discuss the episodes of vomiting, which was in accordance with the accepted standard of medical care. Maguire also testified that, as to the episode when decedent vomited coffee ground emesis, because the amount was small and decedent had no breathing problems, the circumstances did not necessitate calling for medical assistance or require that the nurse stay at decedent's bedside. This testimony was corroborated both by the nurse who transported decedent to the X-ray area and the nurse who was present in the waiting area when decedent vomited coffee ground emesis. Significantly, the evidence at trial demonstrated that, in response to Silverman's testimony, the nurses employed by ORMC did not have the ability to conduct either a bedside stool blood test or order a consultation from a GI specialist.
The conflicting expert opinions offered by the parties at trial "presented a credibility determination for the jury, which, as was its purview, it resolved against plaintiff[]" (Rabideau v Weitz, 169 AD3d at 1332; see Healthcare Professionals Ins. Co. v Parentis, 165 AD3d 1558, 1560 [2018]). Thus, according due deference to the jury's credibility determinations, we find that the evidence did not so preponderate in plaintiff's favor that the jury's verdict could not have been reached on any fair interpretation of the evidence (see Rabideau v Weitz, 169 AD3d at 1332; Longtin v Miller, 133 AD3d 939, 941 [2015]).
Lastly, plaintiff's arguments concerning ORMC's vicarious liability as to Smithen are not properly before this Court inasmuch as he did not appeal from the judgment dismissing the complaint against Smithen (see Flossos v Waterside Redevelopment Co., L.P., 108 AD3d 647, 651 [2013]; Barrows v Alexander, 78 AD3d 1693, 1693-1694 [2010]). In any event, as there was no finding of negligence against Smithen, there is no negligence to impute, vicariously or otherwise, to ORMC (see Smith v Watkins, 145 AD3d 596, 597 [2016]; Polgano v Christakos, 104 AD3d 501, 502 [2013]). Plaintiff's remaining contentions have been reviewed and found to be lacking in merit.
Garry, P.J., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the judgments are affirmed, with one bill of costs.



Footnotes

Footnote 1: Although plaintiff, in his reply brief, indicates that he is withdrawing the appeal from the judgment dismissing his complaint against Amerige-Vogt, "there is no indication that the necessary steps were taken to formally withdraw it" (Baff v Board of Educ. of the Fonda-Fultonville Cent. Sch. Dist., 169 AD3d 1322, 1323 n [2019]; see 22 NYCRR 1250.2 [b] [2]).