■ Peter Hattem, Appellant, v Robert J. Smith et al., Respondents. [52 NYS3d 172]—

Devine, J. Appeals (1) from an order of the Supreme Court (Dowd, J.), entered November 2, 2015 in Otsego County, which granted defendants' motion for an order directing that judgment be entered for a certain amount, (2) from a judgment of said court, entered November 6, 2015 in Otsego County, following a verdict in favor of plaintiff, and (3) from an order of said court, entered January 8, 2016 in Otsego County, which denied plaintiff's motion to set aside the verdict.

Plaintiff was the sole shareholder of JMF Associates of Oneonta, Inc., a corporation engaged in construction and excavation work. He retained defendant Robert J. Smith, an attorney with defendant Coughlin & Gerhart, LLP, to represent him in the sale of those shares to O'Connor and Shew Construction, Inc. (hereinafter OSC). OSC agreed to pay $450,000 for the shares via a $25,000 down payment and a promissory note for the remainder. The note was to be secured by a lien on all of JMF's assets. The transaction was consummated in September 2004 at a branch of NBT Bank where, unbeknownst to Smith, OSC obtained a loan and line of credit from NBT that were secured by the assets of JMF. NBT perfected its security interest by filing a UCC-1 financing statement (hereinafter UCC-1) shortly thereafter. Smith then received the executed documents and, while he prepared a UCC-1 on plaintiff's behalf, he failed to file it. Smith further failed to prepare or file the liens necessary to perfect the security interest in motor vehicles owned by JMF. The failure to perfect proved costly to plaintiff after the Internal Revenue Service filed federal tax liens against JMF and OSC defaulted in its obligations to plaintiff and NBT.

Plaintiff commenced this legal malpractice action in 2007 and, following a jury trial, defendants were found liable and directed to pay damages. This Court upheld the verdict as to liability but, pointing to questions regarding plaintiff's comparative fault that had not been submitted to the jury, remitted for a new trial on the issue of damages (111 AD3d 1107, 1109-1110 [2013]). The subsequent jury trial resulted in a verdict finding that plaintiff had sustained $318,000 in damages. The jury found that 35% of the damages had flowed from plaintiff's negligence, however, and reduced the award by $90,000 due to his unreasonable failure to mitigate them after the fact. Plaintiff appeals from the judgment entered thereon, as well as

orders by Supreme Court that denied his motion to set aside the verdict and granted defendants' motion to direct entry of judgment.

We affirm. Plaintiff asserts that the verdict should have been set aside with regard to the finding of comparative fault and the reduction in damages for his failure to mitigate.* In reviewing a verdict, we "may examine the facts to determine whether the weight of the evidence comports with the verdict, or [we] may determine [whether] the evidence presented was insufficient as a matter of law" (*Killon v Parrotta*, 28 NY3d 101, 107 [2016]). A verdict is against the weight of the evidence "where 'the evidence so preponderate[d] in favor of the [moving party] that [the verdict] could not have been reached on any fair interpretation of the evidence' " (*Johnstone v First Class Mgt. of N.Y., LLC*, 138 AD3d 1222, 1223 [2016], quoting *Grassi v Ulrich*, 87 NY2d 954, 956 [1996] [internal quotation marks and citations omitted]; *see Killon v Parrotta*, 28 NY3d at 107). In contrast, the evidence is legally insufficient to support a verdict "[w]here 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Longtin v Miller*, 133 AD3d 939, 940 [2015], quoting *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see Killon v Parrotta*, 28 NY3d at 108).

Here, Smith sent the sale documents to counsel for OSC in the expectation that they would be executed by OSC's principals and returned to him for plaintiff to sign. Plaintiff was aware of the need for a UCC-1 and was counting on Smith to file one in order to perfect his security interest in JMF's equipment. Plaintiff and OSC's principals nevertheless traveled to an NBT branch at plaintiff's suggestion and executed the documents together, at which time OSC's principals borrowed the funds for the down payment from NBT and opened a line of credit that was secured by the assets of JMF. Plaintiff made no effort to consult with Smith as to the import of this state of affairs, and Smith, who remained ignorant of it, did not obtain the executed sale documents until after NBT had filed a UCC-1. Plaintiff, in other words, created a situation where NBT would have had a superior security interest on JMF's equipment even

---

* Plaintiff voices his disagreement with our prior holding that a basis existed to charge the jury with regard to his comparative fault (111 AD3d at 1108-1109), but that decision constitutes the law of the case and will not be revisited on this appeal (*see Bell v White*, 144 AD3d 1235, 1236 [2016], *lv dismissed* 29 NY3d 961 [2017]; *Calabrese Bakeries, Inc. v Rockland Bakery, Inc.*, 139 AD3d 1192, 1195 [2016]).

if Smith had filed a UCC-1 in a timely manner (*see* UCC 9-317, 9-324). The jury was by no means irrational in finding from the foregoing that plaintiff's actions were negligent and contributed to his losses. Moreover, deferring to the jury's interpretation of the trial evidence and noting that a "determination of comparative negligence is wholly within [its] province," we cannot say that the apportionment of 35% fault to plaintiff was against the weight of the evidence (*Mannello v Town of Ulster, Post 1748, Am. Legion*, 272 AD2d 804, 804-805 [2000]).

As for plaintiff's failure to mitigate damages, he recovered ownership and possession of JMF's equipment and vehicles following the default of OSC in 2007. No vigorous action to enforce the federal tax liens or the NBT liens was underway and, as such, plaintiff's then counsel suggested that he negotiate with the creditors, auction off some or all of the assets to satisfy the NBT and tax liens and keep the remaining proceeds. Plaintiff did not do so and, instead, enticed a third party into purchasing the commercial paper underlying the NBT lien as a prelude to redeeming it. Plaintiff still failed to auction off equipment or vehicles and did not fulfill his obligations under the agreement with the third party. Plaintiff's inaction prompted the third party to commence a replevin action for all of the vehicles and equipment and, after plaintiff defaulted in appearance, the vehicles and equipment were awarded to the third party. A jury could readily find from the foregoing that plaintiff's failure to sell some or all of the equipment and vehicles to satisfy the liens was unreasonable—and that the failure caused him to lose whatever assets or sale proceeds would have remained after satisfying the various liens—and the verdict with regard to mitigation was supported by legally sufficient proof and not against the weight of the evidence (*see Pagnella v Action For a Better Community*, 57 AD2d 1076, 1077 [1977]; *see also Assouline Ritz1 LLC v Edward I. Mills & Assoc., Architects, PC*, 91 AD3d 473, 474-475 [2012]).

Plaintiff's remaining contentions deserve little discussion. His culpable conduct in acquiring JMF's vehicles and equipment but failing to act to satisfy the liens on them "occurred after the alleged malpractice" and, as such, the jury was properly asked to separately consider it "in mitigation of damages" rather than as an aspect of comparative negligence (*Schultz v Excelsior Orthopaedics, LLP*, 129 AD3d 1606, 1608 [2015]; *see Dombrowski v Moore*, 299 AD2d 949, 951 [2002]). The jury's finding that plaintiff had failed to mitigate his damages to the tune of $90,000 may be easily inferred from the difference between the found value of JMF's equipment and

vehicles and the liens that would have been satisfied had plaintiff sold some or all of those assets at auction. Supreme Court was lastly correct to issue a judgment that subtracted $90,000 from the already apportioned damages instead of vice versa, as doing otherwise would have disregarded the distinction between awarding those damages that flow from a defendant's negligent conduct and reducing set damages that would have been lower but for the subsequent unreasonable conduct of a plaintiff (*compare* CPLR 1411 *with Novko v State of New York*, 285 AD2d 696, 697 [2001]).

Peters, P.J., Lynch, Rose and Mulvey, JJ., concur. Ordered that the orders and judgment are affirmed, with costs.