Kehoe v Abate (2019 NY Slip Op 04067)





Kehoe v Abate


2019 NY Slip Op 04067


Decided on May 23, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 23, 2019

527294

[*1]PETER R. KEHOE, Respondent- Appellant,
v
ELDA ABATE et al., Appellants- Respondents.

Calendar Date: March 28, 2019

Before: Garry, P.J., Egan Jr., Lynch and Aarons, JJ.


Girvin & Ferlazzo, PC, Albany (Salvatore D. Ferlazzo of counsel), for appellants-respondents.
Law Offices of Benjamin W. Hill, PLLC, Albany (Benjamin W. Hill of counsel), for respondent-appellant.



MEMORANDUM AND ORDER
Lynch, J.
Cross appeals from a judgment of the Supreme Court (Mackey, J.), entered January 3, 2018 in Rensselaer County, upon a verdict rendered in favor of plaintiff.
Plaintiff, an attorney, leased two adjacent commercial properties (hereinafter the commercial property) located at 121 and 123 Fourth Street in the City of Troy, Rensselaer County to defendants, who he had represented on a variety of legal matters involving other properties and transactions. After defendant Elda Abate expressed an interest in purchasing, plaintiff agreed to sell her the commercial property. In August 1999, defendants executed a note to plaintiff in the amount of $160,000, which represented the purchase price, plus past due lease payments and legal fees. When defendants defaulted on the note, plaintiff commenced this action pursuant to CPLR 3213, seeking the balance due on the note plus interest. When this matter was previously before us, this Court affirmed Supreme Court's order finding that a question of fact existed as to whether there was an attorney-client relationship between plaintiff and defendants that caused defendants to rely on that fiduciary relationship and plaintiff's representations in executing the note (62 AD3d 1178 [2009]). After a trial, the jury found that plaintiff did not have a fiduciary duty to defendants and, therefore, it rendered a verdict in plaintiff's favor. The court thereafter denied a postverdict motion by plaintiff seeking to have both the contract and statutory interest rate added to his award. Both parties appeal.[FN1]
Contending that plaintiff had breached a fiduciary duty to them, defendants maintain that the jury's contrary verdict was against the weight of the evidence. Generally, an attorney-client "relationship arises only when one contacts an attorney in his [or her] capacity as such for the purpose of obtaining legal advice or services" (Matter of Priest v Hennessy, 51 NY2d 62, 68-69 [1980]), and the fiduciary relationship between an attorney and his or her client arises once the former undertakes to perform a specific task for the latter (see Graubard Mollen Dannett & Horowitz v Moskovitz, 86 NY2d 112, 118 [1995]; Busino v Meachem, 270 AD2d 606, 608 [2000]). The fiduciary relationship between an attorney and his or her client "is imbued with ultimate trust and confidence," including "safeguarding client property and honoring the client's interest over that of the attorney" (Beltrone v General Schuyler & Co., 252 AD2d 640, 641 [1998]; accord Elacqua v Physicians' Reciprocal Insurers, 52 AD3d 886, 889 [2008]).
Plaintiff testified that he purchased the commercial property in 1981 and that, shortly thereafter, he became acquainted with defendants as neighboring business owners in Troy. Plaintiff represented the two in different matters over the years. He recalled that because Abate always expressed an interest in purchasing the commercial property, he approached her in 1996 when he was ready to sell. The two negotiated a price, but the sale was not completed and plaintiff subsequently began renting a portion of the commercial property to defendants. From 1997 to 1999, plaintiff represented defendants on various commercial transactions and administrative proceedings before the State Liquor Authority.
In 1998, while he was representing defendants on these various matters, plaintiff again proposed to sell the commercial property to defendants for $250,000. Plaintiff testified that he provided a draft purchase agreement — which involved a sale and exchange of separate property — to defendants and explained the transaction to them and they did not have any concerns. Ultimately, the parties agreed on a purchase price, and plaintiff gave defendants a $25,000 credit based on prior lease payments. Plaintiff acknowledged that, during these negotiations, he was also representing defendants before the State Liquor Authority. He explained that he advised defendants to retain their own attorney on the commercial property transaction and did not represent or advise them in any way and that, in response, "they . . . express[ed] how experienced they were in business and [that] they did [not] need . . . [his] advice to go get a lawyer."
Plaintiff, the lender's attorney and defendants were present at the closing. According to plaintiff, Abate insisted that the lender's attorney was representing her interests and plaintiff explained that the lender's attorney was obligated to the lender only. The lender's attorney did prepare certain documents — including the HUD-1 financing document — none of which identified plaintiff as defendants' attorney. Defendants obtained a certificate of occupancy, bank statements and insurance documents, and there was evidence that defendants' mortgage broker provided title insurance. Among the documents that plaintiff prepared was a document — signed by Abate — that expressly confirmed that she had "chosen not to retain an attorney to represent her interests. [Plaintiff] has undertaken to prepare certain legal documents required for the closing, without charge to . . . Abate [and] . . . Abate, an experienced businesswoman, has freely chosen not to retain an attorney and will represent her own interests in this transaction." Plaintiff testified that before he presented all the documents to Abate for her signature, he read this document out loud at the closing "so everybody at the table would know that [Abate] was representing herself and she acknowledged that she was representing herself." When asked whether plaintiff ever stated at the closing that he was not representing defendants, the lender's attorney responded, "not while I was in the room." The lender's attorney testified that he believed that plaintiff was representing defendants at the closing, but conceded that there was nothing in the documentation to support that belief and that no issues were raised during the closing.
Abate testified that plaintiff had represented her in prior real estate transactions, prepared all the documents required for the closing of the commercial property and that she thought he was representing her at the closing. She testified that she signed "whatever" plaintiff put in front of her and denied both that he told her that he was not representing her and that he recommended she seek independent counsel. She frequently questioned whether various documents were altered, and she disclaimed the authenticity of her signature on the document. [*2]Although Abate testified that defendants did not lease the properties prior to the closing, defendant Mario Abate testified that they did. Both defendants testified that they never saw the document acknowledging that plaintiff was not representing Elda Abate until the commencement of this action.
An attorney may enter into a contract with a client (see Greene v Greene, 56 NY2d 86, 92 [1982]; Kallman v Krupnick, 67 AD3d 1093, 1095 [2009], lv denied 14 NY3d 703 [2010]). Where "an attorney enters into a business relationship with a client while also acting as the client's attorney with respect to the relationship, the attorney must fully and fairly inform the client of the consequences of any action taken in furtherance of the relationship and certainly may not exploit the client's trust for his or her own benefit" (Beltrone v General Schuyler & Co., 252 AD2d at 641; see Greene v Greene, 56 NY2d at 92-93). Even if plaintiff was representing defendants on other matters involving a different property at the time of the closing, the record evinces a factual dispute as to whether there was an attorney-client relationship giving rise to a fiduciary relationship between plaintiff and defendants with respect to the purchase and sale of the commercial property. The jury had the obligation to weigh the competing evidence and to determine which testimony was more credible, and it was entitled to credit plaintiff's recollection of the transaction (see Maksuta v Heitzman, 165 AD3d 1550, 1552 [2018]; Matter of Giaquinto, 164 AD3d 1527, 1531 [2018], affd 32 NY3d 1180 [2019]). Deferring to the jury's interpretation of the evidence (see Hattem v Smith, 149 AD3d 1339, 1341 [2017]), we find that the verdict was not against the weight of the evidence.
Garry, P.J., Egan Jr. and Aarons, JJ., concur.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: Plaintiff has abandoned his cross appeal by failing to raise any issue in his brief with respect to Supreme Court's denial of his postverdict motion (see Towne v Kingsley, 121 AD3d 1381, 1383 n [2014]).