Streit v Katrine Apts. Assoc., Inc. (2023 NY Slip Op 00135)

Streit v Katrine Apts. Assoc., Inc.

2023 NY Slip Op 00135

Decided on January 12, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 12, 2023

534026
[*1]Phyllis Streit, Respondent,
v
Katrine Apts. Associates, Inc., Appellant.

Calendar Date:November 17, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Pillinger Miller Tarallo, LLP, Elmsford (Seth M. Weinberg of Mauro Lilling Naparty LLP, Woodbury, of counsel) for appellant.
Mainetti & Mainetti, PC, Kingston (John T. Casey Jr., Troy, of counsel), for respondent.

McShan, J.
Appeals (1) from a judgment of the Supreme Court (Richard Mott, J.), entered August 18, 2021 in Ulster County, upon a verdict rendered in favor of plaintiff, and (2) from an order of said court, entered April 13, 2022 in Ulster County, which denied defendant's motion to set aside the verdict.
In June 2018, plaintiff was injured after tripping over partially obstructed chicken wire connected to a downed fence while travelling to work from her apartment complex owned by defendant. As a result of the fall, plaintiff was diagnosed with a three-part proximal humerus fracture requiring her to undergo surgery on her left shoulder in June 2018 and then an additional surgery in November 2020 to alleviate pain and increase her function. In March 2019, plaintiff commenced this action, alleging that defendant failed to maintain its property in a safe condition and that its negligence led to her injury. Following a trial, the jury found that defendant owned, occupied or exercised control over the location where plaintiff fell, that it failed to maintain that location in a reasonably safe condition and that such negligence was a substantial factor in causing plaintiff's injuries. The jury apportioned 70% of the fault for plaintiff's accident to defendant and awarded plaintiff $100,000 for past pain and suffering and $650,000 for future pain and suffering. Defendant thereafter moved pursuant to CPLR 4404 to set aside the verdict and order a new trial for liability and damages. Supreme Court denied the motion, determining that there was sufficient evidence for the jury to conclude that defendant had exercised control over the vicinity of plaintiff's fall and that the measure of damages was not excessive. Defendant appeals from the judgment on the verdict, as well as the order denying the motion to set it aside.
We affirm. Defendant contends that the jury verdict is not supported by legally sufficient evidence. More precisely, defendant contends that it did not own, occupy, exercise control or make special use of the property where plaintiff fell. Defendant further asserts that it owed no duty to plaintiff because the broken fence was an open and obvious condition. "A verdict may be set aside as unsupported by legally sufficient evidence where there is simply no valid line of reasoning and permissible inferences which could possibly lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial" (Reynolds v State of New York, 180 AD3d 1116, 1117 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Towne v Kingsley, 163 AD3d 1309, 1310-1311 [3d Dept 2018]). Under a sufficiency review, we undertake "a basic assessment of the jury verdict" and may not make a determination of "insufficiency in any case in which it can be said that the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon" (Mazella v Beals, 27 NY3d 694, 705 [2016] [internal [*2]quotation marks and citation omitted]; see Wright-Perkins v Lyon, 188 AD3d 1604, 1605 [4th Dept 2020]).
As relevant here, "[a] defendant may not be liable for a dangerous condition on property if it did not own, occupy, control or have a special use of the property" (Williams v Hudson NY LLC, 199 AD3d 1083, 1083 [3d Dept 2021], lv denied 38 NY3d 906 [2022]; see Wisdom v Reoco, LLC, 162 AD3d 1380, 1381 [3d Dept 2018]). "In order for a landowner . . . to be liable for a defective condition upon [his or her] property, it must be established that a defective condition existed and that the landowner affirmatively created the condition or had actual or constructive notice of its existence" (Sloan v 216 Bedford Kings Corp., 208 AD3d 1192, 1194 [2d Dept 2022] [internal quotation marks, ellipsis, brackets and citations omitted]; see Vickers v Parcells, 198 AD3d 1160, 1162 [3d Dept 2021]). "The fact that a dangerous condition is open and obvious does not relieve a defendant of all duty to maintain his or her premises in a reasonably safe condition" (Mister v Mister, 188 AD3d 1334, 1334 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; accord Hawver v Steele, 204 AD3d 1125, 1128 [3d Dept 2022]). In other words, "[t]he open and obvious nature of a hazard may obviate a claim that the property owner violated the duty to warn of, or place barriers to protect against, dangers on the premises, but does not eliminate a claim that the presence of the hazardous condition constituted a violation of the property owner's duty to maintain the premises in a reasonably safe condition" (Westbrook v WR Activities-Cabrera Mkts., 5 AD3d 69, 75 [1st Dept 2004]). The determination as to whether a condition is open and obvious generally falls within the province of a jury, as it requires consideration of the unique facts presented by the case before it (see Sebagh v Capital Fitness, Inc., 202 AD3d 853, 855 [2d Dept 2022]; Westbrook v WR Activities-Cabrera Mkts., 5 AD3d at 72).
The evidence at trial established that, on the day of her fall, plaintiff decided to walk to work and elected to use a route that she had used on two prior occasions. That route required her to cross a wooden split rail fence with three horizontal posts near the edge of defendant's property. Photos introduced at trial illustrated that the portion of fence that plaintiff attempted to traverse was damaged, as the top horizontal post had fallen to the ground and the center horizonal post remained attached to a single vertical support. According to plaintiff, as she approached the fence and attempted to step over the detached horizonal posts, she tripped on chicken wire that was buried beneath pine needles and leaves, causing her to fall over the fence and injure her left shoulder. Plaintiff clarified that she was "one step" or "[a]bout a foot" from the fence when she tripped.
A letter between defendant and the Town of Ulster, Ulster County from 2009 evidences that, although there [*3]was some dispute as to ownership of the fence itself, defendant had performed maintenance on some portions of the fence pending resolution as to its ownership. The Town of Ulster indicated that it did not have a survey on file and that one would be necessary to definitively establish ownership, however, there is no indication that such a survey occurred prior to the accident, and the fence was left unmaintained. Defendant's maintenance manager was also unsure whether any part of the fence was on the property. The manager testified that he did not believe the fence was owned by defendant, however, he also noted that he did not have direct knowledge of the property line and that he was unaware whether the fence was on the property until the completion of the survey prior to trial. He also noted that maintenance workers would cut the grass on the area between the parking lot and the fence. Although at trial he denied mowing right up to the fence, he acknowledged that he previously testified inconsistently as to that point. The manager also conceded that defendant had hired a security company that placed signs and cameras around the property, including on various posts on the fence. The manager testified that defendant had removed a portion of the fence in a different area and replaced it with a flower bed.
Defendant also proffered the testimony of a surveyor that it had engaged to conduct a boundary survey of defendant's property, which took place in February or March 2020. The surveyor concluded that the fence was not on defendant's property, save for certain portions that ran along the property border but were not in the vicinity of plaintiff's fall. Specific to the area of broken fence where plaintiff fell, the surveyor determined that the fence was "1.6 feet" away from the boundary line and was located on the property that was now owned by the Town of Ulster. The surveyor acknowledged that he had observed the chicken wire around the fence, but he could not recall if any chicken wire was down near the broken portion of the fence and was unsure if it had extended away from the fence. To that end, the surveyor could not conclude one way or another as to whether the location where plaintiff fell was on defendant's property.
Based on the sum of evidence at trial, it is our view that the jury's verdict is legally sufficient. Defendant's contention that the testimony and evidence elicited from the surveyor is conclusive as to its liability is without merit. In this respect, while the survey established that the fence was beyond defendant's property in the area in question, the surveyor could not definitively state that the chicken wire that plaintiff tripped over, which was connected to the damaged portion of fence, had not extended onto defendant's property at the time of the fall (see Aller v City of New York, 72 AD3d 563, 564 [1st Dept 2010]; compare Galindo v Town of Clarkstown, 305 AD2d 538, 539 [2d Dept 2003], affd 2 NY3d 633 [2004]). Moreover[*4], the testimony of defendant's maintenance manager provided grounds for the jury to conclude that defendant had maintained the property up to the fence itself. This evidence was sufficient for the jury to infer that defendant had control over the location of the chicken wire that had caused plaintiff to fall (see Paget v PCVST-DIL, LLC, 186 AD3d 1162, 1163 [1st Dept 2020]).
We find defendant's contention that it did not have notice of the condition of the area where plaintiff fell is also without merit, as the evidence at trial that defendant had performed maintenance near the area in question was sufficient to establish constructive notice of the danger (see Rivera v Queens Ballpark Co., LLC, 134 AD3d 796, 798 [2d Dept 2015]; Kearsey v Vestal Park, LLC, 71 AD3d 1363, 1364-1365 [3d Dept 2010]; Fox v Kamal Corp., 271 AD2d 485, 486 [2d Dept 2000]). Moreover, the partially obstructed view of the chicken wire negates defendant's contention that the condition was sufficiently open and obvious so as to avoid liability on its part (see Hawver v Steele, 204 AD3d at 1128; Paget v PCVST-DIL, LLC, 186 AD3d at 1163; Dillon v Town of Smithtown, 165 AD3d 1231, 1232 [2d Dept 2018]; see also Bissett v 30 Merrick Plaza, LLC, 156 AD3d 751, 752 [2d Dept 2017]). That determination remained firmly in the hands of the jury, which could reasonably conclude that the partially obscured chicken wire and the circumstances surrounding plaintiff's fall created a condition that implicated defendant's responsibility to keep the premises in a reasonably safe condition (see Sebagh v Capital Fitness, Inc., 202 AD3d at 855; Katz v Westchester County Healthcare Corp., 82 AD3d 712, 713 [2d Dept 2011]).
In any event, the open and obvious nature of the condition is not dispositive as to liability and is more appropriately considered in apportioning fault for the accident (see Greblewski v Strong Health MCO, LLC, 161 AD3d 1336, 1337, 1339 [3d Dept 2018]; Barley v Robert J. Wilkins, Inc., 122 AD3d 1116, 1118 [3d Dept 2014]; MacDonald v City of Schenectady, 308 AD2d 125, 129 [3d Dept 2003]). On that note, we turn to defendant's contention that the jury's apportionment of fault is against the weight of the evidence, which we may only find upon a determination that "the proof so preponderated in favor of the unsuccessful party that the verdict could not have been reached on any fair interpretation of the evidence" (Reynolds v State of New York, 180 AD3d at 1117 [internal quotation marks and citations omitted]). "Showing that a different verdict would have been reasonable will not suffice, as the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Endemann v Dubois, 207 AD3d 1009, 1010 [3d Dept 2022] [internal quotation marks and citations omitted]). Defendant points to the sunny conditions existing at the time of the fall, plaintiff's knowledge of the hazards of crossing the broken fence, which she admittedly had previously done on two prior [*5]occasions, and the availability of other points of egress from defendant's property. However, we note that the existence of each of these conditions was placed squarely before the jury, which had an opportunity to consider them as part of its determination that plaintiff bore substantial fault for her fall. Altogether, it is our view that these factors, considered together or in isolation, do not warrant an adjustment to the jury's determination (see Hattem v Smith, 149 AD3d 1339, 1341 [3d Dept 2017]; Beadleston v American Tissue Corp., 41 AD3d 1074, 1077 [3d Dept 2007]; Duncan v Hillebrandt, 239 AD2d 811, 813-814 [3d Dept 1997]).
Finally, as to defendant's contention directed at the amount of damages awarded by the jury, we note the well-established principle that "[t]he amount of damages to be awarded to a plaintiff for personal injuries is a question for the jury, and its determination will not be disturbed unless the award deviates materially from what would be reasonable compensation" (Wynter v Transdev Servs., Inc., 207 AD3d 785, 787 [2d Dept 2022] [citations omitted]; see CPLR 5501 [c]; Duncan v Hillebrandt, 239 AD2d at 813-814). "As awards for pain and suffering cannot be precisely quantified, the reasonableness of such awards is measured by reviewing comparable cases, and analyzing such factors as 'the nature, extent and permanency of the injuries, the extent of past, present and future pain and the long-term effects of the injury' " (Skelly-Hand v Lizardi, 111 AD3d 1187, 1190 [3d Dept 2013], quoting Nolan v Union Coll. Trust of Schenectady, N.Y., 51 AD3d 1253, 1256 [3d Dept 2008], lv denied 11 NY3d 705 [2008]).
The trial evidence established that plaintiff underwent multiple surgeries following the accident and that she still had significant limitations on her ability to perform routine tasks, such as reaching for her seatbelt or getting dressed. Moreover, plaintiff testified to the significant pain she incurs when she extends her left arm. Plaintiff's first orthopedic surgeon testified that he had performed an open reduction internal fixation to address plaintiff's fractured shoulder. He opined that plaintiff would suffer permanent pain and discomfort as a result of her injury. After the first surgery, plaintiff continued to suffer significant pain, prompting her to seek a second opinion. Following an independent assessment of plaintiff's condition, plaintiff's second orthopedic surgeon performed a reverse shoulder arthroplasty to alleviate her pain and attempt to restore some range of motion. In sum, he noted that plaintiff had suffered a "severe fracture" and opined that, despite surgical intervention to address her injury, plaintiff would never regain normal shoulder function and would have permanent pain and discomfort in her shoulder. In view of the evidence presented concerning the severity and permanency of plaintiff's injury, we do not believe that the jury's award materially deviated from what constituted reasonable compensation [*6]and we decline to disturb it (see Zapata v Yugo J & V, LLC, 183 AD3d 956, 960-961 [3d Dept 2020]; Fabiano v State of New York, 170 AD3d 1301, 1302-1303 [3d Dept 2019]; Greblewski v Strong Health MCO, LLC, 161 AD3d at 1339-1340; DeMarco v DeMarco, 154 AD3d 1226, 1228-1229 [3d Dept 2017]).
Garry, P.J., Lynch, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment and the order are affirmed, with costs.