Santiago v National Grid USA Serv. Co., Inc. (2025 NY Slip Op 01139)

Santiago v National Grid USA Serv. Co., Inc.

2025 NY Slip Op 01139

Decided on February 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 27, 2025

CV-23-1663
[*1]Jason Santiago, Appellant,
v
National Grid USA Service Company, Inc., et al., Respondents.

Calendar Date:January 15, 2025

Before:Egan Jr., J.P., Aarons, Fisher, McShan and Mackey, JJ.

Dalmata, Maloy & Burke, LLP, Schenectady (Christopher R. Burke of counsel), for appellant.
Nicoletti Spinner Ryan Gulino Pinter LLP, New York City (Matthew G. Corcoran of counsel), for respondents.

Fisher, J.
Appeal from an order of the Supreme Court (Mark Powers, J.), entered July 21, 2023 in Schenectady County, which partially granted defendants' motion for summary judgment dismissing the complaint.
In November 2018, defendant National Grid USA Service Company, Inc. and its contractor, defendant DDS Companies (hereinafter DDS), were installing a new gas main near plaintiff's home in the Town of Rotterdam, Schenectady County. Such work required excavation of a trench along the edge of the public road and plaintiff's driveway, which was then backfilled with temporary asphalt. Plaintiff contends that he sustained injuries when he attempted to step over the backfilled trench and the "edge broke off and depressed into the fill," causing him to lose balance and fall. He then commenced this negligence action seeking to recover compensation for his personal injuries and property damage to his house by the roadwork. Following joinder of issue and the completion of disclosure, defendants moved for summary judgment dismissing the complaint in its entirety, contending, as relevant here, that the defect was too trivial to be actionable and was otherwise an open and obvious condition. Plaintiff opposed the motion, and Supreme Court granted the branch of defendants' motion for summary judgment dismissing the personal injury cause of action. Plaintiff appeals.[FN1]
As the proponent of summary judgment, "[a] defendant seeking dismissal of a complaint on the basis that the alleged defect is trivial must make a prima facie showing that the defect is, under the circumstances, physically insignificant and that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses" (Hutchinson v Sheridan Hill House Corp., 26 NY3d 66, 79 [2015]). Since "[t]here is no predetermined height differential that renders a defect trivial" (Claro v 323 Firehouse, LLC, 177 AD3d 1052, 1053 [3d Dept 2019] [internal quotation marks and citations omitted]), "[t]he determination as to whether a defect is so trivial as to be nonactionable requires consideration of all the facts presented, including the width, depth, elevation, irregularity and appearance of the defect along with the time, place and circumstance of the injury" (Bovee v Posniewski Enters., Inc., 206 AD3d 1112, 1115 [3d Dept 2022] [internal quotation marks and citations omitted]). Moreover, "[w]hether a condition is open and obvious does not preclude liability on a [defendant] as a matter of law[, but] rather, it is a factor that impacts the foreseeability of an accident and the comparative negligence of the injured party" (Osterhoudt v Acme Mkts., Inc., 214 AD3d 1181, 1181 [3d Dept 2023] [internal quotation marks, brackets and citation omitted]). The determination of whether a property condition constitutes an actionable defect or "is open and obvious generally falls within the province of a jury, as it requires consideration of the unique facts presented by the case before it" (Streit v Katrine [*2]Apts., Assoc., Inc., 212 AD3d 957, 959 [3d Dept 2023]; see Brumm v St. Paul's Evangelical Lutheran Church, 143 AD3d 1224, 1226 [3d Dept 2016]).
Here, in support of their motion for summary judgment, defendants submitted, among other things, the deposition testimony of plaintiff and the director of health and safety for DDS, an affidavit of a DDS employee working in the area when plaintiff fell, and several photographs of the area where plaintiff alleged he was caused to lose balance and fall. Although the photographs, deposition testimony and the affidavit of the DDS worker conclusively establish that the backfilled trench was a darker hue than the surrounding roadway and plaintiff's driveway, and further that plaintiff was well aware of this backfilled trench as the excavation work had been ongoing for several weeks and that he had walked over it once shortly before the incident, the only actual description of the defect came from plaintiff's deposition. Specifically, he testified that the front of his right foot stepped on what would be the "edge" or "lip" of the preexisting surface and the back of his foot was over the new temporary asphalt backfilling the trench. As he stepped down, the old material "broke off" and "depressed" into the temporary asphalt, which he described as being soft and had "never hardened," and which resulted in a total height differential between half an inch to an inch. Notably, when asked by defendants' counsel to describe if it was a "slip or trip" to the ground, plaintiff was particular in explaining that it was effectively neither, but that "the ground gave way and [he] was no longer stable" and fell as the broken material depressed or settled into the soft backfill. To this point, the director of health and safety for DDS candidly acknowledged during his deposition that temporary asphalt could settle if there are voids left beneath the surface and based on the quality of the compaction, but that he did not know if there were any inspections performed to determine if that had been the case with plaintiff's fall.[FN2] The short affidavit of the DDS employee working when plaintiff fell was also devoid of substance as to this issue, and similarly failed to particularize any details of the defect such as the dimensions, character or any other information to establish that the defect was trivial in nature (see Claro v 323 Firehouse, LLC, 177 AD3d at 1053); the photograph attached to the moving affidavit also did not challenge either the height differential or alleged malleability of the temporary asphalt as identified by plaintiff (see Hutchinson v Sheridan Hill House Corp., 26 NY3d at 83; see also E.F. v City of New York, 203 AD3d 887, 889 [2d Dept 2022]).[FN3]
Although defendants stress that the alleged defect was, at most by plaintiff's own admission, only an inch in height, even physically small defects can be actionable "when their surrounding circumstances or intrinsic characteristics make them difficult for a pedestrian [*3]to see or to identify as hazards or difficult to traverse safely on foot" (Hutchinson v Sheridan Hill House Corp., 26 NY3d at 79). When considering the attendant circumstances, including that the defect formed itself only as plaintiff stepped down on it, the location of the alleged defect in front of plaintiff's driveway and that defendants acknowledged temporary asphalt could depress or settle but had no record or knowledge if they performed any inspection in the area where plaintiff fell, we cannot say "as a matter of law that the condition was so trivial and slight in nature that it could not reasonably have been foreseen that an accident would happen" (Brumm v St. Paul's Evangelical Lutheran Church, 143 AD3d at 1226 [internal quotation marks and citation omitted]). Nor can we say that the defect, which may have formed due to voids under the surface of the temporary asphalt and was not physically observable until after plaintiff stepped down on it, "did not constitute a trap for the unwary" (Wilson v Time Warner Cable, 6 AD3d 801, 802 [3d Dept 2004] [internal quotation marks and citation omitted]; see Hutchinson v Sheridan Hill House Corp., 26 NY3d at 78). To this point, the fact that the backfilled trench had a sharply contrasted hue as opposed to the rest of the roadway surface or the mouth of plaintiff's driveway simply does not translate to an open and obvious condition because of the nature of the defect, which only formed after it had been stepped on, and therefore defendants' reliance on these facts as an aegis is misplaced. Based on the foregoing, defendants failed to establish their prima facie entitlement to summary judgment, and Supreme Court should have denied that branch of their motion (see Bovee v Posniewski Enters., Inc., 206 AD3d at 1116; Claro v 323 Firehouse, LLC, 177 AD3d at 1053-1054; Brumm v St. Paul's Evangelical Lutheran Church, 143 AD3d at 1226-1227; see also Osterhoudt v Acme Mkts., Inc., 214 AD3d at 1182-1183). We have examined the remaining contentions of the parties and have found them to be without merit or rendered academic.
Egan Jr., J.P., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as granted defendants' motion for summary judgment dismissing the third and fourth causes of action for personal injuries; defendants' motion denied to that extent; and, as so modified, affirmed.

Footnotes

Footnote 1: Relating to plaintiff's allegations of property damage, Supreme Court also partially granted that branch of defendants' motion by dismissing certain allegations of damage inside the home. Plaintiff does not challenge such finding on appeal.

Footnote 2: He further testified that the workers putting down the temporary asphalt would visually assess whether there was a safety hazard, but that DDS kept no records of that assessment, there were no protocols dictating how inspections of temporary asphalt should be performed, and that he did not know whether an inspection had been performed in the area of plaintiff's fall before or after the incident.
Footnote 3: In support of their motion, defendants also offered the expert affidavit of Andrew Yarmus, a professional engineer. Although he was able to examine and render an opinion as to plaintiff's property damage claims, Yarmus acknowledged that he was unable to inspect the area of plaintiff's fall as it existed at the time of the incident because the area had been subsequently regraded.