Stegman v City of Glens Falls, N.Y.
2026 NY Slip Op 03486
June 4, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

James Stegman et al., Appellants,
v
City of Glens Falls, New York, Defendant, and Niagara Mohawk Power Corporation, Doing Business as National Grid, Respondent.

Decided and Entered:June 4, 2026
CV-24-2083
Calendar Date: March 24, 2026
Before: Clark, J.P., Aarons, Ceresia, Mcshan And Corcoran, JJ.

Hasapidis Law Offices, South Salem (Annette G. Hasapidis of counsel) and O'Connell & Aronowitz, PC, Albany (Stephen R. Coffey of counsel), for appellants.
Barclay Damon LLP, Syracuse (Matthew J. Larkin of counsel), for respondent.

[*1]
Aarons, J.
Appeal from an order of the Supreme Court (Martin Auffredou, J.), entered December 2, 2024 in Warren County, which, among other things, granted a motion by defendant Niagara Mohawk Power Corporation for summary judgment dismissing the complaint against it.
In August 2020, plaintiff James Stegman was injured when the front wheel of the bicycle he was riding became stuck in a 1¼-inch-wide, 3-inch-deep gap in the roadway along the edge of a metal grate embedded in the travel lane of Maple Street near an intersection in the City of Glens Falls, Warren County. The adjacent grate covers Vault 87, an underground utility vault owned by defendant Niagara Mohawk Power Corporation, doing business as National Grid (hereinafter defendant). In August 2021, Stegman and his spouse, derivatively, commenced this action against defendant and defendant City of Glens Falls, New York, to recover for injuries sustained as a result of the accident, issue was joined, and discovery ensued. During the course of litigation, plaintiffs discontinued the action against the City. Plaintiffs thereafter moved for partial summary judgment on the issue of defendant's liability, and defendant moved for summary judgment dismissing the complaint against it. Supreme Court denied plaintiffs' motion and, as relevant here, granted defendant's motion. Plaintiffs appeal.
"In moving for summary judgment, defendant bore the initial burden of establishing that it maintained the premises in a reasonably safe condition and neither created nor had actual or constructive notice of the allegedly dangerous condition" (Levitt v Tops Mkts., LLC, 240 AD3d 973, 974 [3d Dept 2025] [internal quotation marks and citations omitted]; see Marra v Zaichenko, 214 AD3d 1165, 1166 [3d Dept 2023]). Defendant's expert engineer, Ronald Bova, opined that the gap was part of the vault's design dating from its installation in 1964, meant to allow thermal expansion of the adjacent metal grate. According to Bova, there were no standards directly applicable to the gap, but the gap was consistent with an analogous Department of Transportation standard for drainage grates and a Federal Highway Administration standard for parallel bars, and thus not a defect (see McKee v State of New York, 75 AD3d 893, 894 [3d Dept 2010]). Bova concluded, within a reasonable degree of engineering certainty, not only that the gap was reasonably designed but also safe, particularly given Maple Street's primary use by motor vehicles and — according to Bova — Stegman's unauthorized use of his bicycle on Maple Street. Defendant therefore satisfied its initial burden as to whether the gap was a defective or dangerous condition, "and the burden thus shifted to plaintiff[s] to produce evidentiary proof in admissible form establishing the existence of material questions of fact" respecting those two elements (Alvarez v Prospect Hosp., 68 NY2d 320, 326-327 [1986]; see Zibro v Saratoga Natl. Golf Club, Inc., 55 AD3d 998, 999 [3d Dept 2008]). Plaintiffs [*2]met this shifted burden through the opinion of their expert engineer, Richard Balgowan, who directly contradicted Bova by affirming that the 1¼-inch-wide gap violated a number of applicable standards and regulations, and disputed Bova's assessment of the danger posed by the gap in light of statutes authorizing use of the roadway by bicycles (see Vehicle and Traffic Law § 1231; Felix v Polakoff, 178 AD3d 561, 563 [1st Dept 2019]). Balgowan also submitted defendant's 2003 schematic of the vault purporting to specify a ¼-inch-wide gap at the perimeter of the grate, permitting an inference that the gap's actual width of 1¼ inches constituted a defect. Therefore, "the parties' competing expert affidavits and affirmations present[ed] triable issues of fact" (Schrader v Nichols, 198 AD3d 1153, 1155 [3d Dept 2021]; see Castellanos v 57-115 Assoc., L.P., 211 AD3d 459, 460 [1st Dept 2022]).FN1
Next, defendant's proof establishes lack of actual notice of a dangerous condition as a matter of law based upon the absence of reports of prior incidents, and plaintiffs failed to raise a triable issue of fact in that regard (see Carpenter v J. Giardino, LLC, 81 AD3d 1231, 1232 [3d Dept 2011], lv denied 17 NY3d 710 [2011]). We reach a different conclusion as to constructive notice, which "requires a showing that the condition was visible and apparent and existed for a sufficient period of time prior to the accident to permit a defendant to discover it and take corrective action" (Hagin v Sears, Roebuck & Co., 61 AD3d 1264, 1266 [3d Dept 2009] [internal quotation marks, brackets and citation omitted]). In this regard, defendant met its burden by tendering evidence that its employees inspected the vault in April 2019 and April 2020 without noting the gap (see Raczes v Horne, 68 AD3d 1521, 1522 [3d Dept 2009]). Nevertheless, one of defendant's employees testified that, if the gap had been observed during one of defendant's inspections, it would have been slated for filling and leveling so that snowplows would not hit it. Plaintiffs submitted Google Maps images captured in 2015 and in 2019 in which the gap is visible and, according to Stegman's affidavit, appears to be in the same condition as it was on the date of his accident in August 2020. Balgowan also affirmed that the Google Maps images showed the vault and gap in substantially the same condition as they appeared in photographs taken shortly after the accident. This evidence was enough to create a question of fact as to whether defendant had constructive notice of the gap's existence and its dangerous character with enough time to take corrective action (compare Gray v State of New York, 159 AD3d 1166, 1170 [3d Dept 2018]; Hockenberry v Mehlman, 93 AD3d 915, 917 [3d Dept 2012]; McKee v State of New York, 75 AD3d at 895).
Turning to Supreme Court's conclusion that the gap was trivial and thus not actionable, defendant was required to "make a prima facie showing that the defect is, under the circumstances, physically [*3]insignificant and that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses" (Hutchinson v Sheridan Hill House Corp., 26 NY3d 66, 79 [2015]; see Bovee v Posinewski Enters., Inc., 206 AD3d 1112, 1115 [3d Dept 2022]). Though the gap's 1¼-inch width militates toward triviality, a reasonable factfinder could conclude that the odds of contact with the gap were increased based upon, among other factors, its location inside a travel lane shared with motor vehicles, its 38½-inch length and its orientation parallel to traffic. Stegman also testified that he was riding on Maple Street to access a nearby biking trail, and Balgowan affirmed that bicyclists wishing to ride dedicated biking trails would still need to use roadways like Maple Street to access them. Accordingly, the motion record does not foreclose all questions of fact as to triviality (see Gami v Cornell Univ., 162 AD3d 1441, 1443 [3d Dept 2018], lv denied 32 NY3d 916 [2019]).
To the extent Supreme Court dismissed the complaint based upon its conclusion that the gap was open and obvious and not inherently dangerous, we note that "[w]hether a condition is open and obvious does not preclude liability . . . as a matter of law; rather, it is a factor that impacts the foreseeability of an accident and the comparative negligence of the injured party" (Osterhoudt v Acme Mkts., Inc., 214 AD3d 1181, 1181 [3d Dept 2023] [internal quotation marks, brackets and citation omitted]; see Santiago v National Grid USA Serv. Co., Inc., 235 AD3d 1204, 1205 [3d Dept 2025]). Indeed, "[t]he determination as to whether a condition is open and obvious generally falls within the province of a jury, as it requires consideration of the unique facts presented by the case before it" (Streit v Katrine Apts. Assoc., Inc., 212 AD3d 957, 959 [3d Dept 2023]; accord Santiago v National Grid USA Serv. Co., Inc., 235 AD3d at 1205). "In this regard, the determination of whether an asserted hazard is open and obvious cannot be divorced from the surrounding circumstances, and whether a condition is not inherently dangerous, or constitutes a reasonably safe environment, depends on the totality of the specific facts of each case" (Osterhoudt v Acme Mkts., Inc., 214 AD3d at 1181 [internal quotation marks, brackets and citation omitted]). Here, in addition to the facts and circumstances described above, Stegman indicated that his attention was occupied by a changing traffic light ahead and a moving motor vehicle to the left, and that there were cars parked to his right in designated spots. Viewing all of the evidence in the light most favorable to plaintiffs as the nonmovants (see Hutchinson v Sheridan Hill House Corp., 26 NY3d at 81), the record does not compel the conclusion that the gap was readily observable with the reasonable use of one's senses and not inherently dangerous (see Catman v Back Water Grille LLC, 225 AD3d 966, 968 [3d Dept 2024]; Wolfe v Staples, Inc., 224 AD3d 1126, 1127 [*4][3d Dept 2024]). Plaintiffs' remaining contentions are academic.
Clark, J.P., Ceresia, McShan and Corcoran, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant Niagara Mohawk Power Corporation's motion for summary judgment dismissing the complaint against it; motion denied; and, as so modified, affirmed.

Footnotes

Footnote 1
In reply, Bova opined that Balgowan had misinterpreted the 2003 schematic, asserting that the ¼-inch notation "refers to the thickness of the steel angle and not to the space between the metal grate frame and concrete frame." The experts' competing interpretations of the 2003 schematic present issues of fact and credibility that cannot be resolved on a motion for summary judgment (seeAdmiral Ins. Co. v Joy Contrs., Inc., 19 NY3d 448, 458 [2012]; Dobco, Inc. v Facilities Dev. Corp., 263 AD2d 592, 593 [3d Dept 1999]).