*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 5, 2015                519996
_____

DEBORAH LONGTIN et al.,
                    Appellants,
        v                                     MEMORANDUM AND ORDER

JAMES R. MILLER et al.,
                    Respondents.
_____

Calendar Date:   September 16, 2015

Before:   Lahtinen, J.P., Egan Jr., Devine and Clark, JJ.

                      _____

        DeGraff, Foy & Kunz, LLP, Albany (Luke S. Malamood of
counsel), for appellants.

        Thuillez, Ford, Gold, Butler & Monroe, LLP, Albany (Molly
C. Casey of counsel), for respondents.

                      _____

Devine, J.

        Appeal from an order of the Supreme Court (Teresi, J.),
entered June 26, 2014 in Albany County, which denied plaintiffs'
motion to set aside a verdict in favor of defendants.

        Plaintiff Deborah Longtin was a longtime patient of
defendant James R. Miller, a plastic surgeon who was affiliated
with defendant Albany Plastic Surgeons PLLC as of 2008.  Miller
performed several procedures on Longtin in February 2008,
including a face lift, brow lift and the injection of a substance
known as Sculptra to augment her cheeks.  Longtin later developed
problems with her right eyelid and required surgery to excise
"foreign body granulomas featuring refractile foreign material
and old suture material."

Longtin and her husband, plaintiff Lawrence Salvagni, believed that the granulomas had resulted from the Sculptra injections. They accordingly commenced the present action, alleging that Miller had failed to obtain Longtin's informed consent for the injections of Sculptra and, moreover, had deviated from the accepted standard of care both by placing Sculptra so close to her eyes and by failing to give her suitable instructions for aftercare.[1] Following a jury trial, a verdict was rendered in favor of defendants. Plaintiffs moved to set aside the verdict, arguing that the jury's findings with regard to questions three, five and seven on the verdict sheet were not supported by legally sufficient evidence and were against the weight of the evidence (see CPLR 4404 [a]). Supreme Court denied the motion, and plaintiffs now appeal.

It is initially unclear whether all of the trial testimony is before us, as the record on appeal does not contain a complete, consecutively paginated copy of the trial transcript. Ordinarily, "[a] record on appeal is fatally deficient if this Court is unable to render an informed decision on the merits because the record lacks relevant documents and transcripts of the proceedings held before the trial court" (Bouchey v Claxton-Hepburn Med. Ctr., 117 AD3d 1216, 1216 [2014]). In this case, however, the parties stipulated to the record on appeal and do not dispute that it contains all of the germane testimony. This is accordingly "not a situation where the absence of a trial transcript preclude[s] meaningful review" and, as such, the absence of the full trial transcript is not a fatal defect (McPherson v City of New York, 122 AD3d 809, 810 [2014]; compare Bouchey v Claxton-Hepburn Med. Ctr., 117 AD3d at 1216-1217).

Turning to the merits, we affirm. Where "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial," a verdict may be set aside as unsupported by legally sufficient evidence

---

[1] Plaintiffs discontinued claims against another physician and a hospital prior to trial, leaving Miller and defendant Albany Plastic Surgeons PLLC as the sole defendants.

(Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; see Lang v Newman, 12 NY3d 868, 870 [2009]; Revell v Guido, 124 AD3d 1006, 1010 [2015]). If legally sufficient evidence is found to support a verdict, it may nevertheless be set aside as against the weight of the evidence if "the evidence so preponderate[d] in favor of the [plaintiffs] that [the verdict] could not have been reached on any fair interpretation of the evidence" (Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995] [internal quotation marks and citation omitted]; see Grassi v Ulrich, 87 NY2d 954, 955 [1996]; Revell v Guido, 124 AD3d at 1010). Applying these standards to the record before us, we agree with Supreme Court that the jury's resolution of questions three, five and seven on the verdict sheet ran afoul of neither.

The third question on the verdict sheet asked whether Miller "deviate[d] from acceptable standards of medical care by injecting Sculptra into the periorbital areas of . . . Longtin's face." While there was a considerable amount of rancor at trial as to the exact definition of the periorbital area, the issue distills to the fact that Sculptra should not be injected into areas immediately surrounding the eye, such as the eyelids. Miller testified, and his operative note indicated, that he had appropriately injected Sculptra into an area lower on Longtin's face. His contention was called into question, however, by the fact that granulomas, which are known to be caused by injections of Sculptra, were later excised from Longtin's right eyelid.

Miller and Patricia Fox, a plastic surgeon testifying on his behalf, addressed those questions, testifying that the granulomas could have been caused by sutures made from the same substance as Sculptra. Longtin had undergone prior procedures around her eyes and, in fact, sutures were placed in her eyelids during the same procedure in which the injections of Sculptra occurred. Fox further noted that the "refractile foreign material" found in the granulomas could have been caused by steroids injected by another physician. To put it differently, Miller and Fox took the position that, although the granulomas could have been caused by Sculptra, they could have formed just as easily by other means. The foregoing provides a valid line of reasoning from which the jury could rationally conclude that Miller did not inject Sculptra in an inappropriate area and, as a

result, did not depart from accepted medical practice in administering the injections. Moreover, "giving due deference to the jury's credibility assessments and resolution of the conflicting expert testimony," it cannot be said that the conflicting evidence "preponderated so strongly in [plaintiffs'] favor that the jury's conclusion could not have been based on any fair interpretation of the evidence" (Skelly-Hand v Lizardi, 111 AD3d 1187, 1189-1190 [2013]; see Wolfe v St. Clare's Hosp. of Schenectady, 57 AD3d 1124, 1126 [2008]; Biello v Albany Mem. Hosp., 49 AD3d 1036, 1038 [2008]).

Question five inquired whether Miller deviated from accepted medical standards by failing to instruct Longtin to massage the Sculptra injection sites postoperatively. Miller testified that he orally advised Longtin to massage the affected areas — an activity that would lessen the chance of granulomas developing — but did not give written instructions in that regard.[2] He further testified that there was nothing unusual about his actions, as Longtin had undergone multiple facial surgeries and was well aware that she would be expected to massage the affected areas. Fox indicated that accepted medical practice would ordinarily require written aftercare instructions, but opined that oral instructions were sufficient here because Longtin was a knowledgeable patient who had been treating with Miller for over a decade. This proof was legally sufficient to permit the jury to find that Miller gave "proper instructions to his patient in relation to [postoperative] conduct," and we cannot say that its decision to do so was against the weight of the evidence (Pike v Honsinger, 155 NY 201, 210 [1898]).

Finally, question seven asked whether Miller obtained the informed consent of Longtin to perform the injections of Sculptra. Miller testified that he fully discussed the risks of

_____

[2] Miller did not mention the need to massage in his office notes until an appointment with Longtin several weeks after the surgery. He testified that he specifically noted the need to continue massage at that point because "it would be past the routine postoperative of massage and she was [being required] to continue massage."

the injections with Longtin, and documentary evidence corroborates his testimony.  Indeed, while Longtin may not have received any detailed written documentation as to those risks, she executed a consent form reflecting that she understood "the alternatives, and reasonable risks, and the desired benefits" of the injections.  Fox additionally explained that no detailed consent forms existed for Sculptra injections at the time the procedure here was performed, and opined that Miller had obtained the informed consent of Longtin.  This proof, in short, supported the jury's verdict (see Murray v Maniatis, 21 AD3d 1012, 1013 [2005]; cf. Keane v Sloan-Kettering Inst. for Cancer Research, 96 AD2d 505, 506 [1983]).

Plaintiffs' remaining arguments, to the extent they are properly before us, have been examined and found to lack merit.

Lahtinen, J.P., Egan Jr. and Clark, JJ., concur.

ORDERED that the order is affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court