Reynolds v State of New York (2020 NY Slip Op 00897)





Reynolds v State of New York


2020 NY Slip Op 00897


Decided on February 6, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 6, 2020

528410

[*1]Debbie Ann Reynolds, Now Known as Debbie Ann Curcio, Respondent-Appellant,
v
State of New York et al., Appellants- Respondents, et al., Defendant.

Calendar Date: December 18, 2019

Before: Garry, P.J., Egan, Aarons, Pritzker and Colangelo, JJ.


Smith, Sovik, Kendrick & Signet, PC, Syracuse (Michael Paul Ringwood of counsel), for appellants-respondents.
Levene, Gouldin & Thompson, LLP, Vestal (Gary W. Farneti of counsel), for respondent-appellant.



Colangelo, J.
(1) Appeal from a judgment of the Supreme Court (Tait,
J.), entered February 25, 2019 in Broome County, upon a verdict rendered partially in favor of plaintiff, and (2) cross appeals from an order of said court, entered January 7, 2019 in Broome County, which, among other things, denied a motion by defendants State of New York and Office for People with Developmental Disabilities to set aside the verdict.
From 2004 through 2010, plaintiff worked as a developmental aid for Broome Developmental Center, a residential facility overseen by defendant Office for People with Developmental Disabilities, an agency of defendant State of New York (hereinafter collectively referred to as OPWDD). In October 2010, plaintiff commenced this action alleging, among other things, that she was subject to sexual harassment in the workplace, that OPWDD subjected her to a sexually hostile work environment (see Executive Law § 296 [1]; 42 USC § 2000e et seq.) and that OPWDD failed to properly supervise its employees. Plaintiff claimed that between November 2008 and January 2009, defendant Steve Bezek, one of her former supervisors, sexually harassed her. Her claims of a sexually hostile work environment were based upon the alleged sexual harassment, the behavior of other supervisors in ignoring her initial complaints of harassment and OPWDD's failure to take appropriate action once it knew or should have known of the harassment. Plaintiff's claim of negligent supervision was based on, among other things, OPWDD's alleged failure to properly supervise its employees by allowing acts and words of retaliation against her following her report of patient abuse by another supervisor and her assistance in the investigation of that abuse.
Following a trial, a jury found in plaintiff's favor on the sexually hostile work environment and the negligent supervision claims against OPWDD and dismissed the sexual harassment claim against Bezek. Plaintiff was awarded $300,000 in damages on her sexually hostile work environment claims and $200,000 in damages on her negligent supervision claim. Supreme Court denied OPWDD's subsequent motion to set aside the jury verdict or, in the alternative, to order a new trial, and partially granted plaintiff's request for counsel fees. OPWDD appeals from the judgment entered upon the jury verdict and from the order denying its postverdict motion. Plaintiff cross-appeals from that part of the order as partially denied her request for counsel fees.
We turn first to OPWDD's argument that the jury verdict was unsupported by legally sufficient evidence and against the weight of the evidence. "A verdict may be set aside as unsupported by legally sufficient evidence where 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial'" (Matter of Fraccaro, 161 AD3d 1275, 1276 [2018], lv denied 32 NY3d 911 [2018], quoting Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; accord Longtin v Miller, 133 AD3d 939, 940 [2015]). A jury verdict will be stricken as against the weight of the evidence "where the proof so preponderated in favor of the unsuccessful party that the verdict could not have been reached on any fair interpretation of the evidence" (Matter of Grancaric, 68 AD3d 1279, 1280 [2009] [internal quotation marks and citations omitted]).
With regard to the sexually hostile work environment claims, "an individual plaintiff must show that his or her workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his or her] employment and create an abusive working environment" (Pawson v Ross, 137 AD3d 1536, 1537 [2016] [internal quotation marks and citations omitted]; accord Minckler v United Parcel Serv., Inc., 132 AD3d 1186, 1187 [2015]). "All of the circumstances must be considered, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with [an employee's] work performance" (Pawson v Ross, 137 AD3d at 1537 [internal quotation marks, brackets and citations omitted]). Moreover, the workplace must be both subjectively and objectively hostile. That is, a plaintiff must not only perceive that the conditions of his or her employment were altered because of discriminatory conduct, but the conduct must also "have created an objectively hostile or abusive environment — one that a reasonable person would find to be so" (Forrest v Jewish Guild for the Blind, 3 NY3d 298, 311 [2012]; see Minckler v United Parcel Serv. Inc., 132 AD3d at 1187).
"An employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it" (Matter of State Div. of Human Rights v St. Elizabeth's Hosp., 66 NY2d 684, 687 [1985] [internal quotation marks and citation omitted]; see Forrest v Jewish Guild for the Blind, 3 NY3d at 311; Croci v Town of Haverstraw, 146 AD3d 748, 749 [2017], lv denied 29 NY3d 907 [2017]). "An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation" (Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, 221 AD2d 44, 53 [1996] [internal quotation marks and citations omitted], lv denied 89 NY2d 809 [1997]). If "the [plaintiff] is harassed by a low-level supervisor or a coemployee, the [plaintiff] is required to establish only that the upper-level supervisors had knowledge of the conduct and ignored it; if so, the harassment will be imputed to the corporate employer and will result in [the] imposition of direct liability" (Vitale v Rosina Food Prods., 283 AD2d 141, 143 [2001] [internal quotation marks and citation omitted]). An employer may "disprove condonation by a showing that it reasonably investigated complaints of discriminatory conduct and took corrective action" (id.; see Matter of Father Belle Community Ctr. v New York State Div. of Human Rights, 221 AD2d at 53-54).
We reject OPWDD's argument that the verdict on the hostile work environment claims should have been set aside because it was not based on legally sufficient evidence and was contrary to the weight of the evidence because OPWDD did not know of Bezek's harassing behavior. To the contrary, the evidence clearly supports the finding that OPWDD knew or should have known of Bezek's harassing conduct and failed to take appropriate action. According to plaintiff, Bezek's behavior started out with making inappropriate comments, followed by unwanted touching and requests for her to have sexual relations with him or expose her breasts to him. Bezek's behavior escalated to unwanted touching, which included him grabbing her backside on several different occasions, trying to lift up her shirt, rubbing her shoulders, smelling her hair and pushing himself up against her. Plaintiff testified to an incident in which Bezek became sexually aroused, grabbed his erection and told plaintiff that she had caused his arousal. Although plaintiff acknowledged during cross-examination that she did not mention this incident or the incidents when Bezek attempted to lift up her shirt until trial, she explained that this was because the incidents were embarrassing and "very upsetting and traumatic." Plaintiff recounted complaining to supervisors on multiple occasions about Bezek's inappropriate comments and that they did not intervene on her behalf. She also filed a complaint with the director of Broome Developmental Center that Bezek was sexually harassing her. According to plaintiff, she was never asked to give details about either the words or actions that formed the basis of her sexual harassment claims or the derogatory names she was called. Plaintiff provided 10 pages of handwritten notes describing Bezek's harassing behavior and the hostility she endured from coworkers.
The testimony and trial evidence revealed that, after plaintiff made the complaints, Bezek was never moved to another unit or placed on administrative leave and, although plaintiff was eventually moved to a different unit, she was still "pulled" on a few occasions back to Bezek's unit. A human resources supervisor (hereinafter the HR supervisor) testified that he met with plaintiff and Bezek during the investigation of plaintiff's sexual harassment complaint and thereafter found the results of the investigation to be "inconclusive" based upon unresolved credibility determinations as to what had taken place. His report is devoid of any questions asked of plaintiff and any responses given by her regarding the specifics of her allegations during the investigation. The HR supervisor concluded that there were no witnesses to Bezek's conduct toward plaintiff, but admitted that he took no investigative steps to determine if there were witnesses, and his report contains no indication that he contacted other supervisors or coworkers to see if plaintiff had reported Bezek's sexual harassment to them. The HR supervisor conceded that plaintiff had reported that she had faced hostility and anger from her coworkers when she was transferred to different units ahead of more senior people. He acknowledged that some of plaintiff's transfers were not permitted under the collective bargaining agreement, and that it was not until September 2009, after multiple transfers, that plaintiff was placed in an appropriate unit.
In light of the foregoing, we find that the evidence demonstrated that plaintiff suffered adverse employment actions and was discriminated against in the terms and conditions of her employment as a result of the sexually harassing conduct of Bezek and the hostile work environment to which she was subjected. It was reasonable for the jury to find that plaintiff was improperly transferred between units and, as a result, was forced to endure hostile behavior from her coworkers. The abusive working environment created by the hostility constituted an adverse employment action against her. It was also reasonable for the jury to conclude that the four-month delay in finding a placement for plaintiff to shield her from Bezek was unreasonable and also constituted an adverse employment action against her. Further, the evidence established that the supervisor's investigation was seriously flawed. We are satisfied that the jury verdict in favor of the plaintiff on the hostile work environment claims was legally sufficient and not against the weight of the evidence, particularly given that the testimony at trial presented a credibility determination which the jury resolved — as was its right — in plaintiff's favor and against OPWDD (see Longtin v Miller, 133 AD3d at 941).
We reach the same conclusion with regard to plaintiff's negligent supervision claim. Plaintiff testified that, after she reported observing one of her direct supervisors hit a patient and assisted in the investigation of that supervisor, the supervisor was replaced by his wife. According to plaintiff, she was thereafter called names and subjected to unfavorable work assignments and other retaliatory behavior. Plaintiff claimed that she reported the retaliation to a total of four supervisors, including the HR supervisor, and no action was taken to address the retaliatory behavior. By reporting this behavior, plaintiff established that OPWDD "knew or should have known of the [offending] employe[es'] propensity for the conduct which caused [plaintiff's] injury and that the allegedly deficient supervision . . . was a proximate cause of such injury" (Hicks v Berkshire Farm Ctr. & Servs. for Youth., 123 AD3d 1319, 1320 [2014] [internal quotation marks and citations omitted]). It was therefore reasonable for the jury to conclude that the employees' retaliatory conduct proximately caused an injury to plaintiff. We therefore find that the verdict in this regard is supported by legally sufficient evidence and is not against the weight of the evidence (see Rabideau v Weitz, 169 AD3d 1330, 1332-1333 [2019], lv denied 33 NY3d 912 [2019]).
Turning to OPWDD's challenge to the amount of damages awarded by the jury, "a court may set aside a jury award of damages when that award 'deviates materially from what would be reasonable compensation'" (Albanese v Prozybylowicz, 116 AD3d 1216, 1217 [2014], quoting CPLR 5501 [c]; accord Greblewski v Strong Health MCO, LLC, 161 AD3d 1336, 1339 [2018]). "A challenge to damages will only be successful where the record evidence preponderates in favor of the moving party to such a degree that the verdict could not have been reached on any fair interpretation of the evidence" (O'Connor v Kingston Hosp., 166 AD3d 1401, 1404 [2018] [internal quotation marks, brackets and citations omitted]; see Albanese v Prozybylowicz, 116 AD3d at 1217).
The jury awarded plaintiff $300,000 on the hostile work environment claims and $200,000 on the claim against OPWDD for negligent supervision. As relevant to these awards, the trial testimony of plaintiff and her husband established that, between November 2008 and December 2010, she suffered from panic attacks, became very anxious, sought mental health treatment and became a "zombie" on the medication that was prescribed to alleviate these symptoms. No allegation that plaintiff suffered physical injury was made. OPWDD acknowledges that an award for mental anguish injury based on lay testimony is permitted (see Matter of Cosmos Forms v State Div. of Human Rights, 150 AD2d 442, 442 [1989]), but takes the position that the awarded damages are not reasonably related to the wrongdoing.
In light of the limited evidence of plaintiff's psychological trauma and the lack of medical proof as to the effects of the sexual harassment and coworker retaliation upon her, we find that the award of damages on each claim deviates materially from what would be reasonable compensation and is, therefore, excessive. Accordingly, the award for damages on the hostile work environment claims should be reduced to $150,000 and the award on the negligent supervision claim should be reduced to $100,000, for a total award of $250,000 (see Matter of New York State Div. of Human Rights v Young Legends, LLC, 90 AD3d 1265, 1269-1270 [2011]).
Turning to plaintiff's cross appeal, she contends that there was no reasonable basis for Supreme Court to reduce the amount of counsel fees awarded to her. The court awarded plaintiff 60% of the $344,067.94 requested in counsel fees and expenses, and the award was based upon the favorable verdict on the sexually hostile work environment claims, as such an award is permitted by statute. We find no basis upon which to disturb this award (see Halstead v Fournia, 134 AD3d 1269 [2015]). The parties' remaining contentions have been considered and found to be without merit.
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the judgment and order are modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff $300,000 for damages on her sexually hostile work environment claims and $200,000 on her negligent supervision claim; new trial ordered on the issue of damages unless, within 20 days after service of a copy of the order herein, plaintiff stipulates to reduce the total award for said claims to $250,000, in which event said judgment and order, as so modified, are affirmed.