**Young v Bessemer Trust Co., N.A.**

2025 NY Slip Op 30989(U)

March 25, 2025

Supreme Court, New York County

Docket Number: Index No. 154722/2020

Judge: James d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    <u>Hon. James E. d'Auguste</u>       PART 55

*Justice*

-------------------------------------------------------------------------------X

FRANK YOUNG,

                Plaintiff,

            - v -

BESSEMER TRUST COMPANY, N.A, ISABELLA
CONENNA,

               Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 154722/2020 |
| MOTION DATE | 04/16/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90

were read on this motion to/for       <u>SUMMARY JUDGMENT (AFTER JOINDER)</u> .

In this action for employment discrimination, defendants Bessemer Trust Company, N.A.

("Bessemer") and Isabella Conenna ("Conenna") move, pursuant to CPLR 3212, for summary

judgment to dismiss plaintiff Frank Young's ("Young") complaint.

## BACKGROUND

Bessemer is a privately-owned company that provides wealth planning, investment

planning, investment management, and family office services to its clients (Alvino affidavit, ¶ 2).

Throughout his life, Young identified and presented as an Asian American male of Chinese

origin (Young affidavit in opp, ¶ 4). In February 2016, Young began working as a contractor in

Bessemer's marketing department and in October 2016, at 60-years-old, Young became a full-

time employee in the position of Vice President, Marketing Design and Production (Kumar aff,

exhibit 1 (Young Dep Transcript) at 41-42). As a Marketing Design and Production Manager,

**154722/2020 YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**
  Motion No. 001

**Page 1 of 24**

[* 1]

Young assisted with design, print production, and project management (*id*. at 38). Young's position required attention to detail, ensuring proper execution of all marketing communication material, project management skills and strong interpersonal skills to manage colleagues and vendors (*id.* at 43-44).

At first, Young reported to Susan Gessner, Senior Vice President, Brand Marketing Manager ("Gessner"). Gessner managed the design and production team. (*id.* at 45). At that time, there were 15 employees and contractors, in addition to Young, and two other full-time employees, Gessner, aged 64, and Joanna Steves-Kennedy ("Steves-Kennedy"), aged 52, in the Marketing Department. During his deposition, Young testified that he and Gessner had a "great working relationship" (Kumar aff, exhibit 1 at 74) and that she served as a mentor to him. Young testified that Gessner did not give Young feedback that he could improve the quality of his work (*id*. at 56). He could not recall areas where Gessner thought he could improve his performance.

In Young's 2017 performance review, Gessner stated that Young met expectations, but needed improvement in several areas (Kumar aff, exhibit 1 at 58). She wrote glowing remarks about Young's work, including: "Frank has met the challenge of increased volume of projects by leveraging and managing outsourced vendors" (Kumar aff, exhibit 6 at 2) and

> "Frank produced newly designed and branded marketing collateral for unique client events, the Next Gen invitations, and the Phipps Next Gen events while ensuring that all of the other event-related materials were delivered on schedule. . . He is also adept at producing timely thought leadership pieces . . ."

(*id.* at 1).

Additionally in the 2017 performance review, Gessner noted that Young struggled with time management and "need[ed] to allocate time for planning and prioritization" in order to "further develop in his role" (*id.* at 63-64). She suggested that Young "[e]nroll in a time

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No.  001

Page 2 of 24

2 of 24

[* 2]

management seminar," "evaluate his on-going projects and present a plan to [Gessner] in early January [2018]" (*id.* at 64).

In Young's 2018 performance review, Gessner rated Young as meeting expectations. In the areas of Project Management and Vendor Management, she rated him as exceeding expectations. She further stated that by "skillfully managing a range of vendors and design consultants, Frank is able to deliver high-quality materials to our business partners and colleagues in a timely manner" (Kumar aff, exhibit 8 at 1). Gessner wrote several glowing comments about Young's work, including: "Frank managed the WME with great success" (*id*. at 2) and "Frank has excelled in the area of [produce marketing/design/production support] this year by delivering the PE 15 Fund launch materials ahead of schedule . . ." (*id.* at 1). With respect to her concerns about Young's work, she wrote in part:

> "For [Young] to move ahead in his career he needs to become more proactive when working on specific initiatives that involve senior management . . . It is critical that he communicates deadlines and deliverables clearly to key decision makers on the team – before, during and after meetings . . ."

(*id.* at 9; Kumar aff, exhibit 1 at 86).

Gessner noted again that Young needed to become "more adept at presenting to senior management" (*id.*; Kumar aff, exhibit 1 at 88). Gessner suggested that Young take a course in Executive Presence." (Kumar aff, exhibit 1 at 89). In early 2019, Gessner announced her retirement and Young spoke to her about his interest in succeeding her (*id.* at 94). Gessner asked Young whether he was "really interested" in the position as he "still had more to learn," including "how to deal with the senior management of the firm" (Kumar aff, exhibit 1 at 94, 95, 96). Bessemer began an external search for a qualified candidate to fill Gessner's role and a recruiter identified Conenna as a possible choice for the position (Alvino aff, ¶¶ 4-5; Conenna dep 29). Bessemer selected Conenna for the position based upon her years of management

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No.  001

Page 3 of 24

3 of 24

[* 3]

experience, creative abilities, and specific brand knowledge (Alvino aff, ¶ 5). On July 9, 2019, Conenna began her employment at Bessemer. (Conenna dep 19).

Young then began to report to Conenna (Kumar aff, exhibit 1 at 102). As Gessner was not set to retire until December 2019, she was present to help with Conenna's transition (*id*. at 100). From July through September 2019, Gessner and Young continued to work together on a large project (*id*.). Connena supervised both Young and Steves-Kennedy. She invited each to a meeting to discuss their work. During this time, Young told Gessner that he wished she was not retiring so they could continue to work together (*id*. at 108).

Within the first weeks of working with Young, Conenna questioned Young's performance and ability to manage projects effectively (Kumar aff, exhibit 10 (Conenna dep Transcript) at 42). During one of their first meetings discussing the department, "out of nowhere" Conenna said to Young: "I know this young man who is very good at what you do and he's looking for a job" (Kumar aff, exhibit 1 at 231). Conenna said she wanted to bring this young man in (*id.*). According to Young, Conenna made it clear that Young was not "capable of doing things the way other people did" in other companies, like her former company, Bank of New York, where "she had younger production managers working with her and not here working with her at Bessemer" (*id*. at 235). Young felt that Conenna was isolating him and reducing his responsibilities:

> "She frequently met with other people younger than me, she pulled Joanna as a
> confidante into her office and every time they would go into meetings her door would be
> closed, things that I would be involved with in the past I was no longer involved with and
> I think that she was isolating me because of my age and my cultural background"

(*id*. at 233).

On August 7, 2019, Conenna emailed an internal stakeholder that Young would follow up with him regarding a Bessemer logo project. (Garland Aff. Ex. 10 at 1). On the following day,

**154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**
**Motion No.  001**

**Page 4 of 24**

4 of 24

August 8, without having received a response from Young, Conenna e-mailed Young: "You saw this correct?" (*id.*). Young finally followed up four days later, on August 12th (Kumar aff, exhibit 1 at 131-132; Garland Aff. Ex. 11). A few weeks later, during a meeting with Conenna and the Alternative Investments ("AI") team, Young provided incorrect information while relying on outdated documents. (Kumar aff, exhibit 10 at 43, 51-52). Shortly thereafter, Young provided the same team with initial materials and revised proofs, but his lack of attention to detail prompted senior members of the team to respond with font, formatting, and layout corrections. (*id.* at 43, 54; Garland Aff. Ex. 12). Two senior AI leaders shared negative feedback about Young and asked Conenna to intervene; at one's request, Steves-Kennedy stepped in to correct the materials and prepare final versions (Kumar aff, exhibit 10 at 43-45, 83-84; Conenna Aff. ¶ 4; Garland aff, exhibit 12).

On September 25, 2019, after an urgent request from a wealth advisor analyst, Steves-Kennedy responded that Young was working to get the analyst a sample portfolio – and she copied Conenna and Young on her response (Garland aff, exhibit 13). Ninety minutes later, without any response from Young, Conenna reached out to him to confirm he was working on the assignment (Young Dep. 146; Garland aff, exhibit 13). Finally, Young responded that he was. (Young Dep. 147:10-18; Garland Aff. Ex. 13). In October 2019, when an Event Manager shared with Conenna that Young was not timely responding to her, Conenna asked Young for an update. (Young Dep. 153:2-7; Conenna Dep. 45:18-48:1; Garland Aff. Ex. 14). When Young reported that certain proofs were not ready, Conenna wrote that she "expected [him] to follow up on this and keep it moving." (Garland Aff. Ex. 14). Defendants contend that it became evident to Conenna that Young failed to push projects along proactively and did not effectively manage his time. (Conenna Dep. 42:5-17).

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A          Page 5 of 24
   Motion No.  001

5 of 24

In Young's 2019 performance review, Conenna rated Young's overall performance as "Did Not Meet" expectations. (Garland aff, exhibit 22 at 6). Specifically, Conenna rated Young as "Did Not Meet" expectations in: 1) Operational Efficiency/Process Improvement; 2) Brand Management; 3) Partnership with Business Partners; and 4) Project Ownership. (*id.* at 3-4).

As Gessner had observed in prior reviews, Conenna wrote in the 2019 Performance Review that for Young "to move ahead in his career he need[s] to become more proactive when working on specific initiatives that involve senior management." (Kumar aff, exhibit 1 at 206; Garland aff, exhibit 22). Conenna also explained, "It is critical that he communicate deadlines and deliverables clearly to key decision makers on the team – before, during, and after meetings." (*id.*). Further, Conenna noted that Young "needs to become more adept at presenting to senior management." (*id.*). Young acknowledged that he would work to become "more open and collaborative" and that he would "like to take additional courses on becoming a better public speaker" (Kumar aff, exhibit 1 at 207-208, 208-209; Garland Aff. Ex. 22). But Young did not enroll for any such courses after this review. (*id.* at 208-209).

On November 29, 2019, Young submitted to Human Resources a written response to his 2019 Performance Review; he wrote that he had asked Conenna to "meet to discuss the review and to create a detailed development plan," and reported that they "had a very productive conversation" (*id.* at 216-217; Garland aff, exhibit 23). In his written response, Young requested that his performance rating be changed from "Did Not Meet" expectations to "Meets" expectations. (Garland aff, exhibit 23). Human Resources did not agree to change Young's rating. (Kumar aff, exhibit 1 at 217; Alvino affidavit, ¶ 6). Young also asked to meet with Andrea Alvino ("Alvino"), Principal, Senior Human Resources Advisor, regarding his 2019 performance review. (*id.* at 211-212).

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No.  001

Page 6 of 24

6 of 24

They met on December 3, 2019. (Kumar aff, exhibit 1 at 212, 215-216; Garland aff, exhibit 25). Young told Alvino that he thought his "review [was] unfair," "that [Conenna] has something against [him], and he "[felt] like [he was] being targeted" (Kumar aff, exhibit 1 at 212-213). During that meeting, Young was "letting [Alvino] know about the discrimination" (*id.* at 256-257). Young asked Alvino for advice on how to "diffuse this" and work more effectively with Conenna. (*id.* at 213-214). Responding to Young's request, Alvino worked with Conenna to draft his development plan beginning around December 12, 2019. (Conenna affidavit, ¶ 7; Conenna affidavit, exhibit 1).

After January 10, 2020, Young spoke with Alvino and told her that Conenna invited Young to her office and gestured for him to sit in front of a sign that stated "Wuhan Restricted Zone" (Young affidavit in support, ¶ 10). He believed she was referring to his Chinese heritage. Young further informed Alvino that when he told Conenna about the sign, she looked at it, smirked, crumbled it up, laughed and threw it away (*id.*).

Because Conenna concluded that Young had failed to improve his overall performance, she decided, with the support of her manager and Human Resources, that Bessemer should terminate his employment (Kumar aff, exhibit 10 at 95, 98, 101-102, 108-109; Garland aff, exhibit 28). On February 6, 2020, Conenna and Alvino met with Young to inform him of the termination decision. (Kumar aff, exhibit 1 at 242-243).

In November 2020, Bessemer replaced Young with Adlin Hadad (Hadad), as Vice President, Marketing Production & Design Manager at a base salary of $130,000. At the time, Hadad was 39 years old (Kumar aff , exhibit 24).

Defendants move for summary judgment to dismiss the complaint.

**DISCUSSION**

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No. 001

Page 7 of 24

[* 7]

### a. Young may establish an age discrimination claim under the NYSHRL or the NYCHRL

Young alleges that defendants discriminated against him on the basis of his "race, national origin and/or age" in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (complaint, ¶¶. 69, 83).

In pertinent part, the NYCHRL construction provision states as follows:

> "a. The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed.
> b. Exceptions to and exemptions from the provisions of this title shall be construed narrowly in order to maximize deterrence of discriminatory conduct. Administrative Code § 8-130 (a), (b)."

Under the NYCHRL, "in order to demonstrate liability, a plaintiff need not establish that she or he was subjected to a 'materially adverse' change to terms and conditions of employment, but only that she or he was subject to an unfavorable change or treated less well than other employees on the basis of a protected characteristic" (*Golston-Green*, 184 AD3d at 48).

> "The 'materially adverse' standard effectively acts as a bar under which an employee may suffer a host of adverse employment actions due to discrimination but have no recourse under the discrimination law if the discriminatory conduct did not result in a loss of wages, title, benefits, or responsibilities. This result is entirely inconsistent with the broad remedial purposes of the City Human Rights Law to eradicate discriminatory conduct in the workplace. In contrast to the materially adverse standard, a rule by which liability is determined simply by the existence of adverse differential treatment furthers the City Human Rights Law's deterrent purposes"

*(Golston-Green*, 184 AD3d at 37-38).

As the amended NYSHRL adopts the same standard as the NYCHRL, the plaintiff's "NYSHRL claims rise and fall with [the] NYCHRL claims" (*Syeed v Bloomberg L.P.*, 568 F Supp3d 314, 321 [SD NY 2021]). Accordingly, for purposes of this motion the plaintiff's NYSHRL and NYCHRL claims will be analyzed together (*see* Executive Law Sec. 300; Local Law 85 at 7).

**154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**                    **Page 8 of 24**
  **Motion No.  001**

8 of 24

[* 8]

The NYSHRL and the NYCHRL prohibit discrimination in employment on the basis of age (Executive Law § 296[1][a]; Administrative Code § 8–107[1][a]).

Under the NYSHRL, a plaintiff alleging such discrimination must show that (1) she or he is a member of a protected class, (2) she or he is qualified to hold the position, (3) she or he suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination (*Golston-Green v City of New York*, 184 AD3d 24, 36 [2d Dept. 2020] citing *Stephenson v Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO*, 6 NY3d 265, 270 [2006]). (see Executive Law § 296; Administrative Code § 8-107; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]; *O'Halloran v Metro. Transp. Auth.*, 154 AD3d 83, 100-101 [1st Dept. 2017] ).

In August 2019, the NYSHRL was amended. Among the changes was a revision of the law's construction provision:

> "The provisions of this article shall be construed liberally for the accomplishment of the *remedial* purposes thereof *regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct*"

(L 2019, ch 160, § 6 (new language emphasized); Executive Law § 300).

After a plaintiff makes this prima facie showing, the burden shifts to the defendant to rebut the plaintiff's prima facie case of discrimination or retaliation with a legitimate, nondiscriminatory, or nonretaliatory reason for the adverse employment action. If the defendant meets this burden, then the burden shifts back to the plaintiff to offer admissible evidence that the reasons proffered by the defendants were pretextual (*Ellison v Chartis Claims, Inc.*, 178 AD3d 665, 667 [2d Dept. 2019]).

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A       Page 9 of 24
Motion No.  001

9 of 24

[* 9]

Under the NYCHRL, a plaintiff need not articulate an adverse employment action, but must establish that she or he was "subject to an unfavorable change or treated less well than other employees on the basis of a protected characteristic" (*Gregorian v New York Life Insurance Co.*, 211 AD3d 711, 712 [2d Dept. 2022]). Under the NYCHRL, unlawful discrimination must play "no role" in an employment decision (*Ellison, 178 AD3d* at 668). "A plaintiff may defeat summary judgment by coming forward either with evidence that the defendant's stated reasons were a pretext for discrimination or with evidence that discrimination was one of the motivating factors for the defendant's conduct" (*Ellison,* 178 AD3d at 668).

In order to satisfy this step and make out a prima facie case, plaintiff must establish that he was in a group protected by the statute, that he was qualified for the position in question, that he was denied the position, and that the denial occurred under circumstances which gives rise to an inference of unlawful discrimination" (id.). "That inference may be drawn from direct evidence, from statistical evidence, or merely from the fact that position was filled or held open for a person in the same protected class" (id.).

To support his claim of discrimination, Young offers his deposition testimony, his affidavit in support of his opposition to the motion, and his yearly employment evaluations. Based upon this submission, Young is able to establish a prima facie claim. He is a member of a protected class as he was over 42 at the time of his termination, he was qualified to hold the job, as he was hired for the position, and his termination constitutes an adverse employment action.

With respect to the fourth factor, that his termination gives rise to an inference of unlawful discrimination, Young testified that after he was terminated, he was replaced with a 39-year-old. Further, he states that "throughout his employment with the Defendants, Conenna would overly criticize him and give him negative feedback, writing off the work he had done and

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No.  001

Page 10 of 24

requiring him to do work multiple times without giving him guidance on what to fix, changing standard schedules to give Young less time to conduct tasks, calling Young slow, and criticizing him for using printers that he had a relationship with and he knew could get the projects done effectively" (Kumar aff, exhibit 1 at 154-158). On one occasion Conenna made an "out of context comment" that she knew of a "young man who is very good at what [Young does]" and he's "looking for a job" (Kumar aff, exhibit 1 at 231). Young also testified that Conenna "frequently met with other people younger than [he]," that she made Joanna a confidante, and that he believed Conenna was isolating him because of his age and his cultural background (*id.* at 233). Additionally, she "mentioned" that "she worked with nice young production people at Bank of New York and in her other jobs" (*id.* at 235).

Defendants argue that Young is unable to establish a prima facie age discrimination claim as Young was 60 when Bessemer hired him. Additionally, Conenna, who recommended the termination of Young's employment, was 50 at the time. Further, Gessner was 67 when she retired in December 2019, and Steves-Kennedy, the only other full-time employee on the design and production team was 55 at the time of Young's termination. Moreover, defendants argue that Young's references to Conenna's statements regarding age are simply conclusory observations.

Furthermore, defendants seek to establish that they have legitimate, non-discriminatory reasons for terminating Young. Defendants contend that Young was terminated because of his performance deficiencies "marked by lack of responsiveness," project delays and poor attention to detail.

During her deposition, Conenna testified that she first noticed that Young's work performance needed improvement "starting in the fall of 2019: when she noticed that there were

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A          Page 11 of 24
Motion No.  001

11 of 24

[* 11]

several incidents "where things [Young] was managing did not go as planned or did not go well or was not proactively managed."

In her affidavit in support of defendants' motion, Conenna avers that she questioned Young's ability to manage projects effectively (Conenna affidavit, ¶ 4). According to Conenna, she had Steves-Kennedy take over and correct Young's projects because "he had failed to work proactively or produce high-quality work" (*id.*) On this point, Conenna states that on one occasion, "after the leaders of the Alternative Investments (AI) teams had shared negative feedback regarding Mr. Young's work, [Conenna] asked Ms. Steves-Kennedy to correct the material that Mr. Young had worked on and to provide the AI team with final versions" (*id.*).

Conenna further detailed the importance of the Bessemer annual holiday card for management and client-facing employees. She recounts Young's error with respect to these cards: "In November 2019, when reviewing a sample batch of holiday cards, Bessemer's CEO discovered an error with the cards" (*id.*, ¶ 6). According to Young, the errors in the holiday cards resulted from Conenna's failure to properly review the proofs or to use a printer that was routinely used by Bessemer Trust. This resulted in two errors on the Holiday Card. The first error was the printer that Conenna chose, deleted words from the card (Kumar aff, exhibit 1 at 167-168) and yet, Conenna immediately blamed Mr. Young for the error (*id.*).

Following the correction of the holiday card error, Conenna asked Young "to be sure to order enough gifts and arrange for early delivery. Despite these clear instructions, Mr. Young did not order the correct quantity, which caused a rushed re-order and quality assurance process" (*id.*). According to Young: "Conenna told Young that the number of year-end gifts he wanted to order was too high and that they should order less. Young complied and there was a shortfall in the number of gifts" (Young affidavit in opp at para. 9).

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No. 001

Page 12 of 24

12 of 24

Defendants additionally reference Young's 2019 Year-end Performance Review (2019 Review), which was completed under Conenna as the reviewing manager. According to the 2019 Review, Conenna found that Young's "Operational Efficiency/Process," did not meet standards. Likewise, Young's Brand Management, Partnership with Business Partners, and Project Ownership did not meet standards. Conenna and Young went over the 2019 Review together on January 17, 2020.

In a January 28, 2020, email from Conenna to Alvino, Conenna attaches an email from Young to Conenna that states: "Yes, I had Gary update the files for print but did not think to update it on the intranet. This is my fault that the intranet was not updated. I will have it done now. Referencing these statements from Young, Conenna wrote: "FYI another significant mistake and risk . . ." (Garland aff, exhibit 27).

First, the Court notes that even though Young was 60 at the time he was brought on for full-time employment at Bessemer, Conenna, who recommended Young's termination, was not employed at Bessemer at the time he was brought on. Additionally, while the members of Young's team were indeed well within the protected age category (Gessner, 67; Steves-Kennedy, 55), this fact alone, while weighing against Young's claim, does not resolve the question of Young's treatment (*see Spiegler v Israel Discount Bank of New York*, 2003 WL 21488040 (SD NY 2003]["[t]he fact that 'the actor involved in both employment decisions is also a member of the protected class only enhances the [same actor] inference' that discrimination was not the motive behind plaintiff's termination"][internal citation omitted]); *Williams v New York City Hous. Auth.*, 61 AD3d 62, 78 [1st Dept. 2009] [summary judgment is denied where plaintiff is able to establish facts that she was treated less well than other employees; "liability is determined by the existence of unequal treatment"]).

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No.  001

Page 13 of 24

13 of 24

Next, defendants successfully set forth legitimate, nondiscriminatory reasons for the termination of Young's employment, namely, that Young failed to meet performance expectations related to project organization and management, timely and carefully fulfilling work responsibilities, leadership and growth. Defendants have set forth legitimate non-discriminatory reasons for Young's termination. Defendants argue that they terminated Young because of his performance deficiencies, his lack of responsiveness, his delays in completing projects and his poor attention to detail. Defendants rely on emails from August, September and October 2019, Young's 2019 performance review, and Conenna's affirmation to establish these facts concerning Young's inadequate job performance.

These contentions by defendants, raise triable issues of fact as to whether the defendants' stated reason for the termination of Young's employment was a pretext for age discrimination and whether age discrimination was one of the motivating factors for the decision to terminate his employment (*see Gregorian v New York Life Ins. Co.*, 211 AD3d 711, 713 [2d Dept. 2022]; *Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29 [1st Dept. 2011, lv denied 18 NY3d 811 [2012][where defendants proferred a facially legitimate reason for terminating plaintiff, that she failed in her job requirements after being given a warning and final chance, Court found fact issues to exist]).

According to Young's submission, Conenna made several comments about Young's age. On one occasion Conenna made an "out of context comment" that she knew of a "young man who is very good at what [Young does]" and he's "looking for a job" (Kumar aff, exhibit 1 at 231). On another, she "mentioned" that "she worked with nice young production people at Bank of New York and in her other jobs" (*id.* at 235). She would overly criticize him and give him negative feedback, writing off the work he had done and requiring him to do work multiple times

154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No.  001

Page 14 of 24

[* 14]

without giving him guidance on what to fix, changing standard schedules to give Young less time to conduct tasks, calling Young slow, and criticizing him for using printers that he had a relationship with and he knew could get the projects done effectively" (Kumar aff, exhibit 1 at 154-158). Young also testified that Conenna "frequently met with other people younger than [he]," that she made Joanna a confidante, and that he believed Conenna was isolating him because of his age and his cultural background (*id.* at 233).

The fact that Young was terminated and replaced by a 39-year-old raises questions about Bessemer's treatment of Young with respect to his age. This fact, despite the ages of Conenna, Gessner and Steves-Kennedy, and coupled with the statements made by Connena, that "a younger employee could be brought in to replace Mr. Young," and that "she worked with nice young production people at Bank of New York and in her other jobs" undermines defendants' position that there are no questions of fact requiring a trial on Young's age discrimination claim. The Court finds, based upon the motion papers, that a jury may find that based upon his age, Young was treated less well than other employees and denies defendants' motion on this ground.

**b. <u>Young's Claim of Race and/or National Origin Discrimination</u>**

Defendants further argue that Young is unable to articulate a claim for race or national origin discrimination. It is defendants' position that Young relies upon conclusory statements to suggest both that Conenna subjected him to discriminatory treatment, and that Bessemer terminated him because he is an Asian-American man of Chinese origin.

Young alleges that Conenna: (i) expressed a preference for working with "Italian" printers; (ii) treated Steves-Kennedy "differently" because she was "Italian"; (iii) "looked at [Young] with disdain and kind of tried to avoid [him], making [him] think is it because [he is] Asian"; and (iv) otherwise "blamed" and "target[ed] [Young] because [he is] Asian." (Young

**154722/2020 YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A** **Page 15 of 24**
Motion No. 001

15 of 24

[* 15]

Dep. 224:3-226:13). Young further alleges that on January 10, 2020, when he sat down at Conenna's desk for a scheduled meeting with her, he was faced with a sign on her desk that read: "Wuhan Restricted Zone." According to Young, when he pointed out the sign to Conenna, she took it and laughed and smiled and said it was a joke as she crumpled it up and threw it out:

Specifically, Young testified:

"A: [Conenna] looked at the sign and said, oh this is just a joke, and she just threw it away, smiling, laughing, throwing it away, and I said is this meant for me . . . .
Q: You said that you asked her if this was meant for you?
A: Yeah.
Q: What did she say?
A: She goes, no, ha ha, it's just a joke, and she smiled at me and she threw it away"

(Kumar aff, exhibit 1 at 222-223).

According to defendants, it is undisputed that Conenna did not place it there (or even know of its presence until Young pointed it out to her), and that a temporary consultant at Bessemer, playing a prank directed at Conenna, did so. (Young Dep. 222:7-223:6, 260:14-25; Conenna Dep. 38:3-5, 176:12-177:4, 194:12-18, 196:13-17).

Defendants further argue in their reply that Young is unable to assert a hostile work environment claim here since he did not plead this theory of relief in his complaint, and, therefore, cannot assert such a claim when it is raised for the first time in his opposition to defendants' motion. Further, defendants again seek to establish that it was Young's inadequate job performance that accounted exclusively for his termination.

In opposition, Young argues that defendants subjected him to a hostile work environment based upon his national origin. He argues: "[u]nder the NYCHRL liability for a hostile work environment/harassment cause of action is proved where a plaintiff establishes that [sic] 'was treated less well than other employees because of the relevant characteristic'" (Young memo in opp at 18[internal citation omitted]). Further, Young, among other things, details the incident in

**154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**   **Page 16 of 24**
  Motion No.  001

16 of 24

[* 16]

which Conenna had the "Wuhan Restricted Zone" sign on her desk. According to Young, Conenna invited him to her office and gestured for Young to sit in the seat in which he normally sat. On this occasion, he was seated in front of an 8.5 x 11-inch sign, which stated "Wuhan Restricted Zone." As he is of Chinese origin, Young believed this sign was directed towards him. "As I sat down to speak with her she looked at me and she looked at the sign and said, oh, this is just a joke, and she just threw it away, smiling, laughing, throwing it away (Kumar aff, exhibit 1 at 222).

In December 2019, Young informed Andrea Alvino in Human Resources that he believed that Conenna was targeting him "because [he] is Asian" (depo, 223). Following the meeting with Conenna when Young saw the sign, he visited Alvino in her office and told her about the sign. He testified that he was in Alvino's office in January 2020, and he told her:

> "A. I saw the sign on [Conenna's] desk that said Wuhan restricted zone.
> Q. Did you say anything else?
> A. I said to her I don't know if that was directed at me"

(Kumar aff, exhibit 1 at 260).

After Young was terminated, Alvino investigated the placing of the sign.

Pursuant to the NYSHRL and the NYCHRL, it is an unlawful discriminatory practice for an employer to refuse to hire or employ, or to fire or to discriminate against an individual in the terms, conditions or privileges of employment because of the individual's race or national origin (see Executive Law § 296 (1) (a); Administrative Code of the City of NY (Administrative Code) § 8-107 (1) (a)).

"Under the NYCHRL, there 'are not separate standards' for hostile work environment and disparate treatment claims. Instead, the former is subsumed within the latter (*Moore v Hadestown Broadway Limited*, 722 F Supp3d 229, 245-246 [SD NY 2024][internal citation

**154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**          **Page 17 of 24**
  **Motion No.  001**

17 of 24

omitted] *see also Johnson v Strive East Harlem Employment Group*, 950 F Supp2d 435, 445 [SD NY 2014 [under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims . . . Instead 'there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based' on a protected characteristic").

Similarly, stating a hostile work environment claim under the NYSHRL "requires only that the plaintiff plead sufficient facts showing she was 'subjected to inferior terms, conditions, or privileges of employment' due to her membership in a protected class" (*Moore*, 722 F Supp3d at 246).

To establish a hostile work environment claim even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace (*Alfano v Costello*, 294 F3d 365, [2d Cir 2002]). Under the NYCHRL, a plaintiff claiming a hostile work environment need only demonstrate that he or she was treated "less well than other employees" because of the relevant characteristic (*Bilitch v New York Health & Hosps. Corp.*, 194 AD3d 999, 1003 (2d Dept. 2021]). The determination of hostility depends on whether a reasonable person would find the work environment to be hostile and whether a plaintiff subjectively perceived it to be so" (*Khalil v State*, 17 Misc3d 777, 783 [Sup Court, NY County 2007]). The conduct alleged must, however, exceed "what a reasonable victim of discrimination would consider petty slights and trivial inconveniences" (*Weir v Montefiore Med. Ctr*., 208 AD3d 1122, 1123 [1st Dept. 2022]). In addressing a claim for hostile work environment based upon national origin and race, the Court must take into account all circumstances to determine whether plaintiff subjectively could have perceived the workplace to be permeated with racial animus (Reynolds v State, 180 AD3d 1116, 1117-1118 [3d Dept. 2020]). Although Young does not, in his

154722/2020  YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A
Motion No. 001

Page 18 of 24

[* 18]

18 of 24

complaint, expressly allege this claim as a hostile work environment claim, he does allege these facts as violations of both the NYSHRL and NYCHRL.

The Court finds that Young meets his burden under the NYSHRL and the NYCHRL as the parties' submissions raise questions of fact as to whether Young's race and national origin played a role in his termination. Young asserts that after he and Conenna saw the "Wuhan Restriction Zone" sign on Conenna's desk in January 2020, Conenna laughed and smiled, threw out the sign and claim it was just a joke. In light of what "Wuhan" signified in January 2020,[1] and of Conenna's response to the sign, there are questions of fact that could permit a jury to find that Young's workplace was significantly altered for him. The fact that another temporary consultant working at Bessemer placed the sign as a "practical joke," and that Conenna found it funny and that defendants took no action concerning any of this prior to Young's termination, despite Young's complaint, raises questions. Finally, Conenna's other questionable comments about "Italian printers," and Young's termination in February 2020, strengthen these questions about defendants' treatment of Young that preclude summary judgment on Young's claim of national original discrimination.

In addressing a claim for hostile work environment based upon national origin and race, the Court must take into account all circumstances to determine whether plaintiff subjectively could have perceived the workplace to be permeated with racial animus. Although Young does not in his complaint expressly allege this claim as a hostile work environment claim, he does

---

[1] In early January 2020, the Covid-19 virus was known to the public and there was already fear of Chinese nationals spreading the virus outside of China" (aff in opp at 12). At the time Young saw the sign in Connena's office, a Message from the EEOC Chair on National Origin and Race Discrimination during the Covid-19 outbreak stated:

> "Sadly, there have also been reports of mistreatment and harassment of Asian Americans and other people of Asian descent. In the workplace, these actions can result in unlawful discrimination on the basis [of] national origin or race"

(aff in opp at 13).

**154722/2020 YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**
**Motion No. 001**

**Page 19 of 24**

19 of 24

allege these facts as violations of both the NYSHRL and NYCHRL. As a matter of law, a single act may create such a hostile work environment where that alleged conduct is "sufficiently severe" to transform the plaintiff's workplace (*see Bilitch*, 194 AD3d at 1003).

The Court finds ample support for this finding here. Based upon information released to the public concerning the global pandemic and Chinese nationals, and the consequential hostility toward Asian Americans at that time, as documented by the EEOC, the Court finds that the sign "Wuhan Restricted Area" qualifies as a single incident that may have subjectively transformed Young's work environment. Defendants argue that it was not Conenna, but another temporary consultant in defendants' offices who created the sign and perched it on Conenna's desk as a joke. Yet, Conenna, according to plaintiff, smiled and laughed at the sign before throwing it away. These incidents, and Bessemer's failure to take action during Young's employment, are enough to reflect a workplace that is allegedly tolerant of humor that, in that atmosphere, could fairly be perceived as mocking, harassing, and offensive to Young, and certainly could have raised questions about Young's treatment at defendants' place of business. On this ground, the Court denies defendants' motion.

**c.   Conenna's liability for aiding and abetting under the NYSHRL or the NYCHRL**

In the third and sixth causes of action of the complaint, Young alleges that Conenna "is liable as an aider and abettor of unlawful conduct" in violation of the NYSHRL and the NYCHRL (complaint, ¶¶ 17, 79, 93). Defendants move for summary judgment on these claims on the ground that Conenna can only be liable for aiding and abetting if "the employer's conduct has also been found to be discriminatory" (memo in supp. at 21 *citing Farmer v Shake Shack Enters.*, LLC, 473 F Supp 3d 309, 337 [SD NY 2020]).

**154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**     **Page 20 of 24**
  Motion No.  001

20 of 24

Under the NYSHRL, individuals may be personally liable for their discriminatory conduct as an "employer" or as an "aider and abettor" (Executive Law 296[1]). "As required by the statute's liberal rule of construction," a supervisory role is construed "broadly to include not just those with formal managerial or titular authority over a plaintiff, but as applicable to those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment" (*Russell v New York University*, 42 NY3d 377, 389-390 [2024]; *Melendez v New York City Transit Auth.*, 204 AD3d 542, 543 [1st Dept. 2022][issue of fact precluded summary judgment where individual defendant "had the de facto ability to direct other employees, notwithstanding his official title"]).

Under the NYCHRL, individual defendants may be personally liable for their discriminatory conduct when they "have some supervisory role over the victim of their discrimination" (*Russell*, 42 NY3d at 389).

As Young argues, Conenna clearly satisfies this standard as his direct manager. Moreover, the record contains ample evidence that Conenna participated in the decision by Bessemer Trust to terminate the Plaintiff. Additionally, it was Conenna who gave Young his 2019 Year-End Review, and the 2020 Development plan. Young alleges that Conenna made derogatory statements about his age, and invited Mr. Young into her office and gestured for him to sit in front of a sign reading "Wuhan Restricted Zone." She then smiled, crumbled the sign up, laughed and threw it away.

The Court denies defendants' motion for summary judgment on this ground.

**d. Young's retaliation claim**

Young alleges retaliation by defendants for the two complaints he made to Alvino concerning Conenna's discriminatory treatment. It is Young's testimony that he went to speak to

**154722/2020  YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**
**Motion No.  001**

**Page 21 of 24**

21 of 24

Alvino twice concerning Conenna's discrimination based upon national origin and race. Specifically, he testified at his deposition that in December 2019, he told Alvino he was being discriminated against for being Asian. In January 2020, he informed Alvino about the sign in Conenna's office and about Conenna's reaction to it. There is no indication in the parties' submissions that defendants took any action, including investigating Young's complaints before he was terminated.

In order to establish a claim of retaliation under the NYCHRL, a plaintiff must demonstrate that he: (1) participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged him; and (3) a causal connection exists between the protected activity and the adverse action" (*Cadet-Legros v New York University Hosp. Center*, 135 AD3d 196, 206 [1st Dept. 2015]); *Fletcher v Dakota, Inc*., 99 AD3d 43, 51-52 [1st Dept. 2012]). "Once the plaintiff makes a prima facie showing, the employer must proffer a 'legitimate, nonretaliatory reason for the adverse employment action' and upon such showing the burden shifts back to plaintiff 'to prove intentional retaliation'" (*Sicola v Cushman & Wakefield, Inc*., 210 AD3d 449, 449 [1st Dept. 2022] [internal citations omitted]).

On their motion, defendants question whether Young's first complaint to Alvino is a protected activity, argue that Young cannot establish a causal connection between these complaints and his termination, and explain that Young's termination was in response to his poor work performance. Specifically, defendants again chronicle the facts and issues that Conenna observed and identified regarding Young's work that Gessner had observed before: "Within only a few weeks of working with [Young], I observed performance issues that made me question his ability to manage projects effectively:

> "On several occasions, I had to ask my other direct report, Joanna Steves-Kennedy, to step in and correct Mr. Young's work or take over a project because Mr. Young had

**154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**                    **Page 22 of 24**
  **Motion No.  001**

[* 22]                                                    22 of 24

failed to work proactively or produce high-quality work. On one occasion, for example, after leaders of the Alternative Investments ("AI") team had shared negative feedback regarding Mr. Young's work, I asked Ms. Steves-Kennedy to correct the materials that Mr. Young had worked on and to provide the AI team with final versions"

(Conenna affidavit, ¶ 4).

The Court finds that there are questions of fact concerning whether defendants retaliated against Young for his complaints of discrimination. First, Young's complaints to Alvino in Human Resources constitute a protected activity, as he was complaining of unlawful discrimination, about practices forbidden under the law, and these complaints were known to defendants prior to Young's termination. According to Young, he complained to Alvino about this treatment, including the "Wuhan" sign, prior to his termination. Both Conenna and Young testified concerning the sign. Within one month of reporting the sign, defendants terminated Young's employment. Young complained to Alvino on December 3, 2019, he saw the sign in Conenna's office on January 10, 2020 and he reported it to Alvino in January 2020. Defendants terminated Young at the direction of Conenna less than one month later, in February 2020. Thus, with respect to establishing a causal connection, Young shows there is a strong temporal connection between the protected activity and the adverse action.

Defendants argue that they have set forth legitimate non-discriminatory reasons for Young's termination. Defendants argue that they terminated Young because of his performance deficiencies, his lack of responsiveness, his delays in completing projects and his poor attention to detail. Defendants rely on emails from August, September and October 2019, Young's 2019 performance review, and Conenna's affirmation to establish these facts concerning Young's inadequate job performance.

Based upon the parties' submissions, the Court finds there is a question of fact concerning Young's claim of retaliation, making this claim unsuitable for summary judgment.

**154722/2020 YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**
**Motion No. 001**

**Page 23 of 24**

Accordingly, it is hereby

ORDERED that defendants' Bessemer Trust Company, N.A. and Isabella Connena's motion for summary judgment seeking to dismiss the complaint of plaintiff Frank Young in Motion Sequence 001 is denied in its entirety.

This constitutes the decision and order of the Court.

| **3/25/2025** | | | | | | |
|---|---|---|---|---|---|---|
| **DATE** | | | | **James d'Auguste, J.S.C.** | | |
| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
| | | GRANTED | X | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**154722/2020   YOUNG, FRANK vs. BESSEMER TRUST COMPANY, N.A**
**Motion No.  001**

**Page 24 of 24**

[* 24]